BRIAN SWARTZ *vs.* DEPARTMENT OF BANKING AND
INSURANCE & another.

Suffolk. October 2, 1978. — November 9, 1978.

Present: HENNESSEY, C.J., QUIRICO, BRAUCHER, WILKINS, & LIACOS, JJ.

*Insurance,* Commissioner of Insurance. *Fair Information Practices
Act,* Standing, Data subject. *Constitutional Law,* Search and sei-
zure. *Words,* "Data subject."

Where a plaintiff sought injunctive relief and damages under the
provisions of the Fair Information Practices Act and declaratory
relief with respect to the provisions of G. L. c. 176D, § 5, and the
action was erroneously dismissed on the ground that the plaintiff
did not have standing to sue under the Fair Information Practices
Act, the case was remanded to the Superior Court for consideration
of the plaintiff's claims as to the proper construction of c. 176D, § 5.
[595-597]
An insurance broker licensed pursuant to G. L. c. 175, § 166, who was
the subject of an investigation by the Division of Insurance was a
"data subject" within the meaning of c. 66A, § 2, and had a right
to sue the division under c. 214, § 3B, for alleged violations of the
Fair Information Practices Act. [597–600]

CIVIL ACTION commenced in the Superior Court on Sep-
tember 23, 1977.

A motion to dismiss was heard by *McNaught, J.*

The Supreme Judicial Court granted a request for di-
rect appellate review.

*Owen Gallagher* for the plaintiff.

---

*Jonathan Brant,* Assistant Attorney General, for the defendants.

QUIRICO, J. In this case, we are asked to review the correctness of an order of a judge of the Superior Court, entered pursuant to Mass. R. Civ. P. 12 (b) (6), 365 Mass. 754 (1974), dismissing an action brought by the plaintiff Brian Swartz against the Department of Banking and Insurance (department). The Commissioner of Insurance (Commissioner) was later added as a defendant. Since, for the purpose of testing the correctness of the trial judge's decision to grant the motion to dismiss, we must accept all the allegations of the plaintiff's complaint as true, we state the facts alleged in that complaint. *Jones* v. *Brockton Pub. Mkts., Inc.,* 369 Mass. 387 (1975).

Swartz is licensed, pursuant to G. L. c. 175, § 166, as an insurance broker, doing business under the trade name Townline Insurance Agency. He is also registered with the Commissioner pursuant to G. L. c. 174B, § 10, as an agent for the sale of automobile club service contracts.

On or about August 30, 1977, agents of the Division of Insurance (division) entered Swartz's business premises and demanded to examine his books and records. They had neither a warrant nor probable cause to believe that Swartz had engaged in any unfair or deceptive act or practice prohibited by law. They informed Swartz that the division had the lawful right under G. L. c. 176D, § 5, to examine his books and records, and on that representation Swartz consented to their search.

The agents remained on the premises for four working days, during which time they made a complete search of the area and of all personal items contained therein. They photostated all or portions of Swartz's individual insurance files and mailed a questionnaire relating to motor club service contracts to his customers.

On September 16, 1977, a Boston television station broadcast a news story containing personal data about Swartz which had been obtained by the division during its search. Swartz alleges that the television station received

this data from the division, without his approval, and without statutory authority, and that he was injured thereby.

Based on the above facts, Swartz made three claims for relief. First, he sought temporary and permanent injunctions, and damages, for the violation by the defendants of G. L. c. 66A, § 2, the pertinent section of the Fair Information Practices Act (FIPA). Second, he requested a declaratory judgment under G. L. c. 231A that a search under G. L. c. 176D, § 5, may only be made pursuant to a search warrant. Third, he requested a further declaration that if G. L. c. 176D, § 5, did authorize a warrantless search, it was in contravention of art. 14 of the Declaration of Rights of the Massachusetts Construction and the Fourth Amendment to the United States Constitution.

A preliminary injunction was issued restraining the department from allowing any person or agency other than the division to have access to personal data about Swartz.[1] After the defendants filed their answer, they moved to dismiss the action pursuant to Mass. R. Civ. P. 12 (b) (6) for failure to state a claim on which relief can be granted, on the ground that Swartz as a "business entity" could not bring suit under the FIPA. This motion was allowed by the judge on November 17, 1977, and the action was dismissed. Because the judge's order did not address the two claims for declaratory relief in Swartz's complaint, and because it applied the incorrect legal standard for standing to sue under the FIPA, we reverse.

1. *The Claims for Declaratory Relief.*

The parties agree that an actual controversy exists between them as to the right of agents of the division to

---

[1] This injunction was entered before the Commissioner was added as a defendant. The department appealed the granting of this injunction, but pursuant to Mass. R. A. P. 29 (a), 365 Mass. 877 (1974), the parties stipulated to a dismissal of this appeal after the judge granted the defendants' motion to dismiss the action. This injunction has continued in force pending the present appeal of the order to dismiss.

search and seize books and records without a search warrant. Where there is such a controversy concerning the construction and constitutionality of a statute, a proceeding for declaratory relief is appropriately brought. *Mobil Oil Corp.* v. *Attorney Gen.*, 361 Mass. 401, 405-406 (1972).

The division claimed the right to search Swartz's premises under G. L. c. 176D, § 5, as appearing in St. 1972, c. 543, § 1, which provides: "The commissioner shall have the power to examine and investigate into the affairs of every person engaged in the business of insurance in this commonwealth in order to determine whether such person has been or is engaged in any unfair method of competition or in any unfair or deceptive act or practice prohibited by section two." The defendants contend that this section furnishes them with legal justification for a warrantless search.

Since the action was dismissed for lack of capacity to sue, the judge never had the benefit of any evidence or argument on the validity of a warrantless search under G. L. c. 176D, § 5, nor has this issue been fully briefed before this court. In reversing the order of dismissal, we are providing the parties with an opportunity to present to the trial judge their differing views of the proper construction of the statute. At that time, relevant factual issues in dispute between the parties should also be addressed, such as whether the defendants had probable cause to believe that Swartz was committing unfair or deceptive acts, and whether the records searched and seized by the division were business records or were personal records. Resolution of these issues would bear on the final disposition of Swartz's legal claims. If, for example, the judge finds that *personal* records were searched, the defendants' claim of legal right under G. L. c. 176D, § 5, would be significantly weakened. On the other hand, a *routine* warrantless search of the *business* records of a practitioner of a regulated business might well be valid, even in the absence of probable cause.

If the judge rules that G. L. c. 176D, § 5, does permit such a warrantless search, he must then consider Swartz's contention that the statute is unconstitutional. On this issue, we note only that the United States Supreme Court very recently reaffirmed the rule that, although a warrant is generally required for searches of business as well as residential premises, there is an exception for "pervasively regulated business[es]" (quoting from *United States* v. *Biswell*, 406 U.S. 311, 316 [1972]), with "a long tradition of close government supervision." In such cases, "[t]he reasonableness of a warrantless search . . . will depend upon the specific enforcement needs and privacy guarantees of each statute"; for statutes applicable to specific industries, "regulations might already be so pervasive that a *Colonnade-Biswell* exception to the warrant requirement could apply." *Marshall* v. *Barlow's, Inc.*, 436 U.S. 307, 313, 321 (1978). *United States* v. *Biswell*, 406 U.S. 311 (1972). *Colonnade Catering Corp.* v. *United States*, 397 U.S. 72 (1970).[2] We leave to the judge, in the first instance, the task of applying these general legal principles to the specific factual context of this case.

2. *Right to Sue Under FIPA.*

The defendants maintain that Swartz, as a "business entity," had no right to sue under the FIPA. This Act, first passed by the Legislature in 1975, was intended to correct abuses in the way in which personal data about individuals, collected by State agencies, were maintained, disseminated, and used. Special Legislative Commission on Privacy—First Interim Report, 1975 House Doc. No. 5417. The statute requires every agency maintaining personal data on individuals to follow certain procedures

---

[2] In *United States* v. *Biswell*, 406 U.S. 311 (1972), the Court upheld the constitutionality of a Federal statute permitting warrantless inspections of licensed firearms dealers; in *Colonnade Catering Corp.* v. *United States*, 397 U.S. 72 (1970), the Court similarly held that Congress had broad power to authorize warrantless inspections under the liquor laws.

designed to ensure that such data remain confidential, are kept accurate and timely, and will be made accessible to the data subject on his request. G. L. c. 66A, § 2. The Legislature also passed a companion act, G. L. c. 214, § 3B, giving individuals damaged by agency violations of the FIPA a right of action against the agency for damages, including exemplary damages, attorney's fees, and injunctive relief. Swartz claims a right to sue under this section.

The key phrase for determination of Swartz's right to sue is "data subject," for only "data subjects" are given control over and access to their personal data under the Act. G. L. c. 66A, § 2. In the original 1975 version of the law, "data subject" was defined as "an individual whose name or identity is added to or maintained in a personal data system." St. 1975, c. 776, § 1. In 1977, the General Court passed a series of amendments to the FIPA, St. 1977, c. 691, §§ 6-13, which, among other things, changed the definition of "data subject" to read: "an individual to whom personal data refers. This term shall not include corporations, corporate trusts, partnerships, limited partnerships, trusts or other similar entities." G. L. c. 66A, § 1, as amended through St. 1977, c. 691, §6.

Swartz first argues that because the 1977 amendments did not take effect until October 29, 1977, his standing to sue must be determined under the older definition of "data subject" in effect at the time of the complained-of acts. Since we hold that Swartz has a right to sue even under the amended and more restrictive definition of "data subject" currently in effect, we need not decide that claim.

The general purpose of the 1977 FIPA amendments proposed by the special legislative commission on privacy was, in the commission's words, to "better accommodate and balance potential conflicts between the demands of individual rights of privacy and the need to make certain information available to the public." Special Legislative Commission on Privacy—Second Interim Report, 1977

House Doc. No. 6106, at 9. The commission's report suggested a definition of "data subject" which reads: "an individual to whom personal data refers. This term shall refer only to human beings, and shall not refer to entities such as corporations, corporate trusts, partnerships, limited partnerships, trusts or other entities." The commentary accompanying this proposed amendment in the commission report explains: "The Fair Information Practices Act was intended to apply to records about individuals only. It was not intended to apply to corporations or other *organizations*. This amendment should clarify any confusion which may have been caused by the use of the term 'data subject' " (emphasis supplied). *Id.* at 11.

After the proposed amendments had been reviewed and approved by the House Committee on the Judiciary, a number of changes in language were made on the floor. Among these were the alteration of the definition of "data subject" to its present form by dropping the reference to "human beings" and inserting the word "similar" so that the phrase read, "corporations, corporate trusts, partnerships, limited partnerships, trusts or other *similar* entities" (emphasis supplied). These changes only reinforce our conclusion, based on the language of the statute and the commentary in the commission's report, that the Legislature meant to include individual business people such as Swartz within the coverage of the Act. The exclusion, as we read it, is for artificial legal *entities* or *organizations* which are not to be protected by the FIPA. *Individuals*, on the contrary—whether employees, professionals, or in business for themselves—are to have their privacy protected by the Act.

This conclusion is strengthened by a reference further on in the commission's report to the hypothetical case of a "data subject . . . who runs a beauty salon," who is to be allowed, under the FIPA, to see an agency file concerning customer complaints about his salon. 1977 House Doc. No. 6106, *supra* at 18. Although this hypothetical situation was not explicitly intended to clarify the definition

of "data subject," it does support a reading of that defini-
tion which would include individual proprietors, such as
Swartz, within its scope.[3]

We hold, then, that Swartz had a right to sue under the
FIPA and G. L. c. 214, § 3B. On its face, his complaint
states a valid cause of action under the statute, since it
alleges that the division released personal data about him
contrary to the dictates of the FIPA. The defendants as-
sert in their brief that, even if Swartz were a "data sub-
ject," the information allegedly disclosed was not "per-
sonal data" within the meaning of the Act. But whether
information was disclosed, and, if so, what sort of infor-
mation it was, are questions of fact to be resolved in a
trial court and not here. We express no opinion as to the
merits of Swartz's claims; we hold only that the judge
below was in error in dismissing them under Mass. R. Civ.
P. 12 (b) (6).

*Judgment reversed.*

---

[3] The Attorney General has ruled that practitioners of nineteen
regulated trades and professions, including medicine and other health
professions, architects, engineers and surveyors, embalmers and fu-
neral directors, barbers, real estate brokers and salesmen, nursing
home administrators, and electricians, are covered by the FIPA and
that personal information about them can be released to the public
only to the extent mandated by the Public Records Law. G. L. c. 4, § 7,
cl. 26. Rep. A.G., Pub. Doc. No. 12, at 157 (1977). If real estate brokers
are within the coverage of the Act, it is difficult to see why an insur-
ance broker would not be.