SAMUELS PHARMACY, INC., & another[1] *vs.* BOARD OF
REGISTRATION IN PHARMACY.

Suffolk. September 13, 1983. — December 12, 1983.

Present: HENNESSEY, C.J., WILKINS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Search and Seizure,* Administrative inspection. *Declaratory Relief. Administrative Law,* Exhaustion of remedies.

A complaint in an action by a pharmacy and its part-owner alleging that they were the victims of unlawful searches and seizures by the Massachusetts State police, and seeking a permanent injunction restraining the defendant Board of Registration in Pharmacy from using any evidence so obtained in certain disciplinary proceedings pending against them failed to state an appropriate case for declaratory relief under G. L. c. 231A, absent a final determination of the matter by the board. [587-592]

CIVIL ACTION commenced in the Superior Court Department on June 11, 1982.

Following transfer to the Supreme Judicial Court for the county of Suffolk, the case was reported by *Wilkins, J.*

*Paul W. Shaw* for the plaintiffs.

*William L. Pardee,* Assistant Attorney General, for the defendant.

LYNCH, J. This case arises from an action brought in the Superior Court in the county of Suffolk by the plaintiffs, Samuels Pharmacy, Inc. (Samuels), and William M. Bagley, Jr., seeking a declaratory judgment that they were the victims of unlawful searches and seizures by the Massachusetts State police, and a permanent injunction restraining the defendant Board of Registration in Pharmacy (board) from using any evidence obtained as a result of the unlawful searches and seizures in administrative disciplinary proceedings now

---

[1] William M. Bagley, Jr.

pending against the plaintiffs. A single justice transferred the case to the Supreme Judicial Court for Suffolk County (see G. L. c. 211, § 4A), and thereafter reserved and reported it to this court without decision. We order that the complaint for declaratory judgment be dismissed.

There is no dispute on the facts in this case. Samuels is a large community pharmacy located in Winthrop. For over fifty years, Samuels has been registered with the board (G. L. c. 112) and has been licensed to dispense controlled substances (G. L. c. 94C). Bagley is part-owner of Samuels, its treasurer, and is employed there full time as a pharmacist. He has been a registered pharmacist since 1966.

At 2:30 P.M. on June 8, 1982, members of the Massachusetts State Police Narcotics Unit (including a State police sergeant), two Winthrop police officers, and one investigator from the board arrived at Samuels and announced their intention to conduct an administrative search and audit of the controlled substances at the pharmacy. They presented an administrative inspection warrant, which had been issued by the East Boston Division of the District Court Department pursuant to G. L. c. 94C, § 30.[2] The warrant had been requested by the State police sergeant; the board itself did not in any way instigate the investigation. The administrative inspection lasted three days (the investigator for the board was present only on the first day). During these three days, the following documents were seized: all prescriptions for Schedule II[3] controlled substances for the years 1980, 1981, and 1982; all order forms used to order these drugs for

---

[2] General Laws c. 94C, § 30 (a), as appearing in St. 1971, c. 1071, § 1, in part states: "'[A]dministrative inspection warrants' are warrants for the purpose of inspecting, copying and verifying the correctness of records, reports or other documents required to be kept by a registrant on controlled premises and for the seizure of property appropriate to such inspection."

[3] Schedule II controlled substances are those which have a high potential for abuse, have a currently accepted medical use in treatment, and may lead to severe psychological or physical dependence if abused. Schedule III controlled substances are less likely to be abused and are less risky if they are abused. G. L. c. 94C, § 3, as amended through St. 1972, c. 806, § 8.

the period of 1981-1982 (222C Federal form); all prescriptions for four particular Schedule III controlled substances[4] for the period of 1981-1982; and all invoices from drug wholesalers for shipments of pharmaceuticals to Samuels for the period of 1980-1982. In addition, the investigator for the board made an inventory of all the Schedule II controlled substances that were on the premises on June 8, 1982. Many of the documents were removed by the State police at the end of each day of searching, to prevent their destruction and to permit photocopying.

On the evening of June 10, 1982, after the conclusion of this laborious and painstaking search, the State police sergeant informed Bagley and Lloyd F. Lyons[5] that his inspection had turned up large shortages for a number of controlled substances from January, 1981, through June, 1982. He opined that these drugs had been illegally diverted from Samuels into illicit channels and stated that he intended to bring this case to the attention of the district attorney. At this time, the sergeant informed the pharmacists of their Miranda rights and gave them each the opportunity to explain the shortages. They declined to make a statement.

On June 11, 1982, the sergeant informed the executive secretary of the board that his audit had revealed a shortage of about 120,000 Schedule II controlled substances over the period January, 1981, through June 8, 1982. The board voted immediately to suspend the registration of Samuels pursuant to G. L. c. 94C, § 14.[6]

Also on June 11, Samuels filed a civil complaint in the Superior Court in Suffolk County seeking to restrain the suspension ordered by the board until a hearing could be

---

[4] Valium, doriden, carbitral, and didrex.

[5] Bagley's associate, manager of Samuels, and president of the corporation. He is not a party to this case.

[6] General Laws c. 94C, § 14, as appearing in St. 1971, c. 1071, § 1, reads in pertinent part: "The board of registration in pharmacy in the case of a retail drug business . . . may without hearing suspend . . . any registration if [it] finds that there is an imminent danger to the public health or safety which warrants this action . . . ."

held. A temporary restraining order was issued, and on June 14 it was extended indefinitely, until further order of the court.

On June 18, the board held a hearing pursuant to G. L. c. 30A to decide whether the continued operation of Samuels presented an imminent danger to the public health and safety. At this hearing, Samuels, which was represented by counsel, did not challenge the validity of the administrative inspection warrant or the legality of the search and did not request that evidence seized during the course of that search be suppressed. An order issued by the board on June 21 upheld the suspension of Samuels' registration pending formal disciplinary proceedings before the board unless all the present pharmacists were replaced. On June 23, a judge of the Superior Court granted Samuels' motion that the board be restrained from suspending the pharmacy's license until the completion of formal disciplinary proceedings, on the condition that Samuels cease dispensing Schedule II controlled substances and turn over to the board all its inventory of such drugs as well as the Federal order forms for them.

On June 23 the State police sergeant and other State police returned to Samuels with a criminal search warrant. Pursuant to this warrant, they seized over 7,000 more documents, including all the filled prescriptions for Schedule II controlled substances and all Federal 222C order forms for the years 1977 through 1979. They returned on July 7 with a second search warrant and the records they had taken pursuant to the administrative search warrant on June 10. They proceeded to "seize" these very same records pursuant to the criminal warrant.

On July 2, the board initiated disciplinary proceedings against Samuels, Bagley, and Lyons for alleged misconduct in the practice of pharmacy. The hearing on these complaints has been postponed pending the resolution here of this case. The board has informed the plaintiffs that it does not believe the "exclusionary rule" is applicable to administrative disciplinary proceedings. On August 27, the plain-

tiffs filed the supplemental complaint seeking declaratory and injunctive relief which is before this court.

We do not reach the issue whether the exclusionary rule applies in the board's administrative disciplinary hearings, nor do we decide whether the administrative search warrant involved here was lawful under recent cases on this subject. *Commonwealth* v. *Frodyma*, 386 Mass. 434 (1982). *Commonwealth* v. *Lipomi*, 385 Mass. 370 (1982). *Commonwealth* v. *Accaputo*, 380 Mass. 435 (1980). In our opinion, this case is not an appropriate one for declaratory judgment. The plaintiffs should pursue their administrative remedies: go through with the disciplinary proceedings, make whatever objections they deem appropriate, and, if the board rules against them, pursue the usual avenues of appellate review.

We first address the board's claim that as an individual party Bagley lacks standing to challenge the lawfulness of the administrative search. However, as a result of our decision this case will go back to the board for completion of the disciplinary proceedings; the logical course is for the board to consider, at that time, the question of Bagley's standing as well. We therefore turn to consideration of whether declaratory relief is appropriate in the circumstances of this case.

Among other things, declaratory relief "may be used in the superior court to enjoin and to obtain a determination of the legality of the administrative practices and procedures of any . . . state agency or official which practices or procedures are alleged to be in violation of the Constitution of the United States or of the constitution or laws of the commonwealth . . . which violation has been consistently repeated." G. L. c. 231A, § 2. The plaintiffs here allege that the searches and seizures by the State police were violative of the Fourth and Fourteenth Amendments to the United States Constitution, and therefore the indication by the board that it will admit the seized evidence at the disciplinary hearing is a "practice" which also violates the Constitution. Their allegations are unfounded. There is no reason

to assume that this evidence has been illegally seized or is unavailable, at least not before the board has had the opportunity to determine some necessary facts. For instance: Were these records required by law to be kept by the pharmacy for the purposes of inspection?[7] The plaintiffs claim they were not. Was the search conducted by the State police a proper administrative search, carried out in the manner and for the purposes prescribed by G. L. c. 94C, § 30? The answers to these questions may show that the search is not one falling within the protection of the Fourth Amendment. See *Kipperman* v. *State*, 626 S.W.2d 507 (Tex. Crim. App. 1981) ("the requirements of the ordinance that the pawnbrokers' records be kept and available for examination by police officers . . . did not infringe on the constitutional guarantee against searches and seizures"); *Hosto* v. *Brickell*, 265 Ark. 147 (1979) (pharmacist does not have expectation of privacy regarding pharmacy records required to be kept by statute for the purpose of inspection; Fourth Amendment is not implicated). Without the answers to these questions, the plaintiffs have no basis for their allegations that the board is engaging in an unconstitutional practice.

It is clear from *East Chop Tennis Club* v. *Massachusetts Comm'n Against Discrimination*, 364 Mass. 444 (1973), that "[a] proceeding for declaratory judgment in itself does not operate to suspend the ordinary requirement that a plaintiff exhaust his administrative remedies before seeking judicial relief." *Id.* at 450. The exceptions to that rule are rare. In *Meenes* v. *Goldberg*, 331 Mass. 688 (1954), the court said, "[c]ommonly relief under . . . [G. L. c. 231A] should not be denied because of the possibility of some other form of rem-

---

[7] General Laws c. 94C, § 15, as appearing in St. 1971, c. 1071, § 1, requires pharmacies to keep records and maintain inventories in accordance with Federal law (see 21 U.S.C. § 301 and 21 U.S.C. § 827 [1976]). General Laws c. 94C, § 25 (5), says that no person "shall refuse or fail to make, keep, or furnish any record . . . required under this chapter." General Laws c. 94C, § 30 (*a*), defines "administrative inspection warrants" as warrants "for the purpose of inspecting, copying and verifying the correctness of records, reports or other documents required to be kept by a registrant on controlled premises."

edy, if the case presented comes within the general scope of the chapter and no special reasons exist against the use of the declaratory process." *Id.* at 691. As outlined above, the plaintiffs have not met the first requirement. Their claim does not come within the general scope of G. L. c. 231A because they do not challenge a "practice" or "procedure" of the agency which "has been consistently repeated." G. L. c. 231A, § 2, as amended through St. 1974, c. 630, § 1. It is stipulated in the statement of agreed facts that the Board of Registration in Pharmacy has informed the plaintiffs that it does not believe the exclusionary rule is applicable to administrative disciplinary proceedings. The source of that statement seems to be the notification of hearing sent to Bagley and Lyons which states, "the Board intends to treat the evidence and exhibits introduced at the hearing of June 18, 1982 admitted to the forthcoming hearing of August 3, 1982." The letter indicates that the board will entertain objections to "this stipulation." It is signed by the executive secretary of the board. It is unclear under precisely what authority the executive secretary made this statement. It is not a formal ruling of the board, nor would it be formally binding if the board for some reason decided to exclude the evidence at the hearing. The board consists of seven persons, G. L. c. 13, § 22, as amended by St. 1982, c. 452, of whom three members constitute a quorum. G. L. c. 112, § 27, as amended by St. 1976, § 444. The board elects an executive secretary from among its own members. G. L. c. 13, § 23, as appearing in St. 1953, c. 280, § 1. All seven members of the board have an equal vote. The statements of the executive secretary, even if he claimed to be speaking for the board, do not bind the other members. Furthermore, the fact that the board will hear objections to the admission of the evidence indicates that it is at least willing to consider questions raised as to the propriety of that position. The plaintiffs have not shown that the ordinary requirement of exhaustion of administrative remedies should be suspended in this case.

The plaintiffs argue that if a constitutional issue is found to be raised in this case the board would be without authority to decide it because constitutional questions must be decided in a judicial rather than an administrative forum. Plaintiffs' reliance on *Selectmen of Framingham* v. *Civil Serv. Comm'n*, 366 Mass. 547 (1974), is misplaced. In that case the court declared that "the *ultimately* controlling decision of a constitutional issue is for the courts" (emphasis added). *Id.* at 554. The court did not say that an administrative agency could not at any time consider a constitutional question and, in fact, in that very case the court left it to the commission to decide whether the wearing of long hair in defiance of a police regulation constituted just cause for the suspension of a police officer. The executive branch, as well as the judicial, is charged with upholding the Constitution, and there is no bar to an executive agency undertaking to enforce the Constitution, even if it is the courts that may have the final word. *Donovan* v. *Sarasota Concrete Co.*, 693 F.2d 1061, 1067 (11th Cir. 1982).

Finally, it should be noted that an agency decision in favor of the pharmacy would mean that the constitutional issue, if there were one, need not be reached. See *Baldwin Metals Co.* v. *Donovan*, 642 F.2d 768 (5th Cir.), cert. denied sub nom. *Mosher Steel Co.* v. *Donovan*, 454 U.S. 893 (1981) (the agency was the proper forum to make the initial determination of the validity of an administrative search warrant, because its decision might render the constitutional question moot).

Essentially the plaintiffs are asking the court's opinion about an evidentiary ruling which has not yet been made. A declaratory judgment action is not to be used to secure advance evidentiary rulings. "Allowing the district courts to consider requests for declaratory and injunctive relief concerning [administrative] warrants prior to a final administrative decision invites dilatory tactics by companies faced with an enforcement proceeding." *Baldwin Metals, supra* at 772-773. See also *East Chop Tennis Club, supra.*

Another way of describing the flaw in the plaintiffs' request for declaratory judgment is to say that there is no actual controversy between the plaintiffs and the board, as that term has come to be understood in the context of G. L. c. 231A, § 1. This is not to say that there is no dispute between the board and the plaintiffs simply because it was the State police, and not the board, that instigated the search. But because there has been no formal action by the board, no actual controversy exists.

In support of their argument that this petition presents an actual controversy, the plaintiffs cite *Swartz* v. *Department of Banking & Ins.*, 376 Mass. 593 (1978), and *Ciszewski* v. *Industrial Accident Bd.*, 367 Mass. 135 (1975). In *Ciszewski*, the plaintiff sought a declaratory judgment after a conclusive ruling by the Industrial Accident Board that it did not have the authority to issue a rule permitting her attorney to make an inspection of her workplace. This was an actual controversy over the authority of the board to promulgate a rule; the board had formalized its position in a ruling and the plaintiff disagreed. In *Swartz*, agents of the State's Division of Insurance had conducted a warrantless administrative search and the plaintiff sought a declaratory judgment that such searches had to be conducted pursuant to a warrant. However, there were no administrative proceedings pending against the person who had been searched in which the lawfulness of the search could be tested.

The case at hand resembles more *Penal Insts. Comm'r for Suffolk County* v. *Commissioner of Correction*, 382 Mass. 527 (1981). In that case, the penal commissioner was concerned about overcrowded conditions at the Suffolk County house of correction at Deer Island and sought a declaratory judgment enjoining the commitment of any new prisoners and ordering the Commissioner of Correction to transfer some of the inmates who were already there to other institutions. The penal commissioner claimed that the constitutional rights of the prisoners would be violated should the overcrowded conditions get any worse. The court refused to issue a declaratory judgment, stating, "[c]onclusory alle-

gations as to official duties or potential future conflicts will not do; '[i]t requires clear allegations of specific facts to state a case for any relief, or to show that any real controversy exists, based upon abuse of . . . official discretion.'" *Penal Insts., supra* at 531, quoting *Poremba* v. *Springfield*, 354 Mass. 432, 434 (1968). Until the Board of Registration in Pharmacy issues a final determination of the matter, there is no controversy appropriate for resolution by means of a declaratory judgment.

Therefore, we find that declaratory judgment is not appropriate in this case, and we remand it to the single justice who will enter a judgment dismissing the complaint.

*So ordered.*