DEBORAH S. TELLES & others[1] *vs.* COMMISSIONER OF
INSURANCE.

Berkshire. March 7, 1991. - July 3, 1991.

Present: LIACOS, C.J., WILKINS, ABRAMS, NOLAN, LYNCH, & GREANEY, JJ.

*Administrative Law*, Regulations. *Regulation. Commissioner of Insurance. Insurance*, Life insurance, Regulation. *Constitutional Law*, Separation of powers, Regulation, Equal Rights Amendment.

The Commissioner of Insurance was without authority to promulgate regulations prohibiting life insurers from considering gender-based mortality differences in the underwriting of life insurance, where insurers had the statutory right to classify risks, and thus gender-based classifications for the determination of insurance rates were permitted under the statutory scheme. [562-566] ABRAMS, J., concurring.

CIVIL ACTION commenced in the Superior Court Department on August 12, 1988.

The case was heard by *Lawrence B. Urbano*, J., on a motion for summary judgment.

The Supreme Judicial Court granted a request for direct appellate review.

*Michael B. Keating* (*Steven W. Phillips* with him) for the plaintiffs.

*William L. Pardee*, Assistant Attorney General, for the Commissioner of Insurance.

*Richard E. Barnsback & Phillip E. Stano* of the District of Columbia, *& Lane McGovern*, for American Council of Life Insurance, amicus curiae, submitted a brief.

---

[1] The plaintiffs in this case are female residents of the Commonwealth who have purchased life insurance policies, male residents who have purchased policies insuring the lives of female family members, and two insurance companies.

NOLAN, J. Today we are asked to decide whether the Commissioner of Insurance (commissioner) may lawfully issue regulations which prohibit life insurers from considering gender-based mortality differences in the underwriting of life insurance.[2] We hold that the commissioner is not authorized to promulgate the regulations in question, as they are in direct conflict with several statutes which expressly permit the very type of risk classification involved in this case.

Effective September 1, 1988, the commissioner issued regulations prohibiting a life insurer from considering gender-based mortality differences in the underwriting of life insurance. 211 Code Mass. Regs. §§ 35.00 et seq. (1987) ("unisex" regulations). Insurance underwriting is the process by which an insurer determines whether, and on what basis, to accept a risk. The regulations prohibited insurance companies from using any table or other statistical compilation as a basis for any action which classifies residents of the Commonwealth into separate classes based on race, color, religion, *sex*, marital status, or national origin. 211 Code Mass. Regs. § 35.04 (1) (emphasis supplied). The regulations also stated that "[n]o policy . . . shall, on the basis of . . . sex . . . treat any covered person . . . differently than it treats or would treat any other covered person . . . with respect to the availability, terms, conditions, rates, benefits or requirements . . . ." 211 Code Mass. Regs. § 35.04 (2).

Prior to the issuance of the regulations, Massachusetts insurance companies used gender-based mortality tables to classify individuals and to determine insurance rates. The mortality rates for males are generally higher than those for females. In the case of ordinary life insurance, which involves periodic premium payments until the policy matures, a woman would likely make payments for a longer period of time before death. Therefore, prior to these regulations, life insurance premiums were lower for females than they were for

---

[2]We note that the regulations in question are applicable to "all types of insurance." 211 Code Mass. Regs. § 35.02 (1987). However, we review the regulations in the context in which they have been challenged, to wit, gender-based differences in the underwriting of life insurance.

males. Pursuant to the unisex regulations, insurance companies must ignore gender in the determination of insurance rates, benefits, conditions, or requirements. The regulations, therefore, have resulted in higher life insurance premiums for women than for men.

The plaintiffs commenced this action on August 12, 1988, and sought a preliminary injunction to enjoin the regulations from taking effect. The motion was denied. The regulations took effect on September 1, 1988. On October 16, 1989, the plaintiffs filed a motion for summary judgment on counts I (lack of statutory authority), II (violation of c. 175 and c. 176D), III (arbitrary and capricious claim), and VI (equal protection claim). The parties had stipulated to the dismissal of count IV (due process claim) and count V (impairment of contracts claim). The parties agreed that there were no disputed issues of material fact. The judge below determined that the commissioner had the implicit authority, derived from art. 1 of the Massachusetts Declaration of Rights, as appearing in art. 106 of the Amendments,[3] to issue the regulations. The judge also determined that the regulations did not have a discriminatory purpose. Therefore, the judge allowed the commissioner's motion for summary judgment and denied the plaintiffs' cross motion. We granted the plaintiffs' application for direct appellate review. We now vacate the judgment.

The commissioner has conceded that the mortality rates for males are generally higher than those of females. He does not dispute that females as a class have fewer deaths than males as a class at every interval. In September of 1988, when the unisex regulations first barred the use of separate mortality tables based on gender, insureds of different risk

---

[3]Article 1, as appearing in art. 106, states: "All people are born free and equal and have certain natural, essential and unalienable rights; among which may be reckoned the right of enjoying and defending their lives and liberties; that of acquiring, possessing and protecting property; in fine, that of seeking and obtaining their safety and happiness. Equality under the law shall not be denied or abridged because of sex, race, color, creed or national origin."

classifications (men and women) were required to be grouped
together. Given this, the unisex regulations are in direct con-
flict with several Massachusetts statutes which permit insur-
ers to engage in the very type of risk classification involved in
this case. See G. L. c. 175, § 120; c. 176D, § 3 (7); c. 175,
§ 144 (1988 ed.).

The statutory pattern which deals with insurance regula-
tion authorizes insurers to "discriminate fairly." *Life Ins.
Ass'n of Mass.* v. *Commissioner of Ins.*, 403 Mass. 410, 416
(1988). We stated in *Life Ins. Ass'n* that "[t]he basic princi-
ple underlying statutes governing underwriting practices is
that insurers have the right to classify risks and to elect not
to insure risks if the discrimination is fair." *Id.* at 415. We
went on to acknowledge that "[t]he intended result of the
[information gathering] process is that persons of substan-
tially the same risk will be grouped together, paying the
same premiums, and will not be subsidizing insureds who
present a significantly greater hazard." *Id.* at 416.

Chapter 175, § 120, and G. L. c. 176D, § 3 (7), illustrate
the principle that insureds must be treated in accordance
with their risk classification. Chapter 175, § 120, states that
"*[n]o life company* and no officer or agent thereof *shall
make or permit any distinction or discrimination in favor of
individuals between insurants of the same class and equal
expectation of life* in the amount or payment of premiums or
rates charged for policies of life or endowment insurance, or
annuity or pure endowment contracts, or in the dividends or
other benefits payable thereon, or in any other of the terms
and conditions of the contracts it makes" (emphasis sup-
plied). Chapter 176D, § 3 (7), also has a provision that de-
fines "[u]nfair discrimination" as that which treats individu-
als of the same class and equal expectation of life
differently.[4]

---

[4]General Laws c. 176D, § 3, provides, in part: "The following are
hereby defined as unfair methods of competition and unfair or deceptive
acts or practices in the business of insurance . . . (7) Unfair discrimination:
(*a*) making or permitting any unfair discrimination between individuals of
the same class and equal expectation of life in the rates charged for any

This statutory scheme requires the commissioner to treat equally insureds who are of the same risk classification. This may result in "fair discrimination." It is conceded that women are of a different risk classification than men, given their differences in life expectancy. Regulations which make it mandatory to place women in the same risk category as men, such as the unisex regulations, are in direct conflict with c. 175, § 120, and c. 176D, § 3 (7).

Likewise, c. 175, § 144 (6A) (*h*), provides that "[a]ll adjusted premiums and present values referred to in this section shall for all policies of ordinary insurance be calculated on the basis of (*i*) the Commissioner[s'] 1980 Standard Ordinary Mortality Table . . . ." This table (CSO Table), published in 1980, and based on experience data from 1970 through 1975, treated males and females as distinct classes, with separate mortality tables. In 1982, the Legislature had amended G. L. c. 175, § 144, to authorize directly the use of the CSO table. St. 1982, c. 334, § 2. The unisex regulations expressly bar the use of separate mortality tables based on an insured's sex, in direct conflict with c. 175, § 144.

It is settled that a "an administrative board or officer has no authority to promulgate rules and regulations which are in conflict with the statutes or exceed the authority conferred by the statutes by which such board or office was created." *Bureau of Old Age Assistance of Natick* v. *Commissioner of Pub. Welfare*, 326 Mass. 121, 124 (1950). The unisex regulations are in direct conflict with several statutes regulating insurance practices. These statutes have not been amended, and there is no judicial decision which states that the statutes are unconstitutional. The commissioner may not issue a regu-

---

contract of life insurance or of life annuity or in the dividends or other benefits payable thereon, or in any other of the terms and conditions of such contract; or (*b*) making or permitting any unfair discrimination between individuals of the same class and of essentially the same hazard in the amount of premium, policy fees, or rates charged for any policy or contract of accident or health insurance or in the benefits payable thereunder, or in any of the terms or conditions of such contract, or in any other manner whatever."

lation which is in conflict with statutes which control his authority. Accordingly, the commissioner was without power to issue the regulations in question.

The commissioner contends that, even in light of the statutory scheme, art. 1 bestows authority on him to promulgate the regulations. We disagree. The commissioner's authority to issue regulations is delegated by the Legislature and does not derive from the State Constitution. The Legislature has explicitly denied the commissioner the authority to issue the challenged regulation. It is the legislative, not the executive, branch which is given the power to make laws. Whatever the merits of the regulations may be, the doctrine of separation of powers embodied in art. 30 of the Massachusetts Declaration of Rights requires that an administrative agency receive a proper delegation of authority before promulgating rules of general application. An administrative body does not have any inherent authority to issue regulations.[5]

The judge properly concluded that the commissioner lacked any statutory authority to issue the regulations in light of our decision in *Life Ins. Ass'n, supra.* The judge erred, however, when he determined that the Massachusetts Constitution provides the commissioner with implicit authority to regulate underwriting practices as they regard gender.

The commissioner lacked either express or implied authority to promulgate the regulations. He did not derive any authority from the Massachusetts Constitution. Furthermore, the regulations at issue directly conflict with several of the statutes which regulate insurance practices. The commissioner may not issue regulations which conflict directly with these statutes. Therefore, the judgment for the defendant is vacated and the case is remanded for entry of a judgment declaring that 211 Code Mass. Regs. §§ 35.00 et seq. (1987)

---

[5]We noted in *Life Ins. Ass'n of Mass.* v. *Commissioner of Ins.,* 403 Mass. 410, 417 n.7 (1988), that we were not presented with the question of the commissioner's authority to enforce constitutional protections by regulation, in the absence of statutory authority. That question is also not presented in this case because there is a statutory scheme in direct conflict with the commissioner's regulations.

are void because the commissioner lacked authority to issue the regulations.

*So ordered.*

ABRAMS, J. (concurring). I concur. It is important to emphasize what is not at issue in this case. The constitutionality of the various statutes (G. L. c. 175, § 120; G. L. c. 176D, § 3 [7]; and G. L. c. 175, § 144 [1990 ed.]) is not before the court. The sole basis for the decision is the commissioner's lack of authority to issue the regulations.

An administrative agency has only those powers, duties, and obligations expressly conferred on it by statute or reasonably necessary to carry out the purposes for which it was established. See *Saccone* v. *State Ethics Comm'n*, 395 Mass. 326, 335 (1985); *Hathaway Bakeries, Inc.* v. *Labor Relations Comm'n*, 316 Mass. 136, 141 (1944). The power delegated by the Legislature to an agency does not include the inherent power to determine whether a particular piece of legislation is constitutional. See *Weinberger* v. *Salfi*, 422 U.S. 749, 765 (1975); *Public Utils. Comm'n of Cal.* v. *United States*, 355 U.S. 534, 539 (1958). "[I]t is fundamental in our system of government that courts, and not administrative agencies, must resolve *conflicts* which may arise between statutory and constitutional provisions" (emphasis in original). *School Comm. of Springfield* v. *Board of Educ.*, 362 Mass. 417, 431 (1972). See 3 K.C. Davis, Administrative Law Treatise § 20.04, at 74 (1958). Any other rule would put too much uncertainty in the administrative process. Thus, when an administrator is charged with enforcing a duly enacted piece of legislation, he or she may not disregard that duty because of a personal belief that the legislation is unconstitutional. If the commissioner thought that the use of gender-based mortality tables violated art. 1 of the Massachusetts Declaration of Rights, as amended by art. 106 of the Amendments (Equal Rights Amendment), he should have sought a declaratory judgment pursuant to G. L.

c. 231A (1990 ed.). See *School Comm. of Springfield, supra* at 432.

As the court concludes, G. L. c. 175, § 144 (6A) (*h*) (1990 ed.), expressly authorizes gender-based discrimination in the determination of insurance premiums.[1] In the face of such express authorization, the commissioner was without the power to prohibit the practice, even if he believed the Constitution itself forbids it. The commissioner must seek a judicial declaration on the constitutionality of the various statutes.

---

[1] I do not agree with the court's conclusory and unnecessary determination that G. L. c. 175, § 120, and c. 176D, § 3 (7) (1990 ed.), conflict with the unisex regulations. Both provisions prohibit unfair discrimination between persons "of the same class and equal expectation of life." Contrary to the court's unexplained conclusion, these provisions do not expressly authorize gender-based discrimination merely because such discrimination may be actuarially sound. Actuarial soundness does not automatically translate into "fair" discrimination (as, for example, in the cases of religious, ethnic, or race-based classifications). The court assumes without explanation that gender-based discrimination is fair. That issue, however, should be determined in a proceeding considering the constitutionality of the statutes. Moreover, the statutes do not define what constitutes a permissible "class." Therefore, the commissioner may be within his authority in interpreting an ambiguous term to prohibit the use of group classifications protected by the Equal Rights Amendment. See *Samuels Pharmacy, Inc.* v. *Board of Registration in Pharmacy*, 390 Mass. 583, 590 (1983); *Grocery Mfrs. of Am., Inc.* v. *Department of Pub. Health*, 379 Mass. 70, 75 (1979).

Given the clearly contradictory language contained in c. 175, § 144, in my view, it was completely unnecessary for the court to decide whether these two provisions also conflict with the regulations. The better practice would have been for the court to rest its decision solely on c. 175, § 144.