Kenton-Walker, Janet, J.
Plaintiffs, all physicians and members of the Group Practice Plan (“GPP”) at the University of Massachusetts Medical School, filed an action against the defendants, University of Massachusetts Medical School (“University”) and the State Board of Retirement (“SBR”), seeking a declaratory judgment in the form of a legal determination that the provisions of G.L.c. 30, §46 are not applicable on the issue of their retirement benefits calculation. Both parties agree there are no material facts in dispute and the case presents a pure question of law, and each seeks summary judgment. After hearing, and for the reasons set forth below, plaintiffs’ motion for summary judgment is DENIED: and defendants’ cross motion for summary judgment is ALLOWED.

BACKGROUND

At issue is whether plaintiffs are exempt from the provisions of that portion of the General Salary Sched *303 ule (“salary cap”) contained in G.L.c. 30, §46, for the calculation of retirement benefits. Plaintiffs assert they are exempt from the salaiy cap and, therefore, all of their earnings should be included as regular compensation under G.L.c. 32, §1 in the calculation of their retirement benefits. Defendants assert that, pursuant to the statutes, only plaintiffs’ base salary should be used in the calculation of their retirement benefits. Both parties rely on various statutes to support their arguments.
Since 1974, plaintiffs have been members of the University’s GPP, which was created by the Legislature in St. 1974, c. 733. Under this legislation, plaintiffs receive not only an annual base salary, but also additional payments from a fee-generated trust fund. Chapter 733 made it explicit that “(a]ll members of the professional and nonprofessional staff of the medical school shall continue to be employees of the Commonwealth,” but when computing state retirement benefits, only the employees’ annual base salary would be used. St. 1974, c. 733, §6. Thus, c. 733 allowed members of the GPP to receive additional compensation over and above their base salaries, except when computing pension benefits.[3]
The Legislature subsequently enacted St. 1991, c. 142, which abolished the salary cap for all University employees. The 1991 legislation did not repeal or otherwise alter the provisions of c. 733, §6. GPP members, therefore, continued to have their pension benefits calculated based only upon their base salaries, not their total compensation.
Lastly, in 1997, the Legislature enacted St. 1997, c. 163, which merged the University with Memorial Health Care Inc., to create UMass Memorial Health Care (“UMMHC”). This legislation provided that members of the GPP would remain employees of the University whose services would be leased to UMMHC pursuant to contracts negotiated between the University and UMMHC. The statute further provided that the University could terminate the GPP employees and, after Februaiy 11, 2008, UMMHC could offer them employment directly.

DISCUSSION

All parties agree there are no material facts in dispute and the case is ripe for summary judgment. With the enactment of the subsequent statutes in 1991 and 1997, plaintiffs argue they became exempt from the salary cap and that all their income should be used to calculate their retirement benefits under G.L.c. 32. Defendants assert that the case is not ripe for judicial action because plaintiffs have not exhausted their administrative remedies. To date, the plaintiffs have not commenced any administrative actions with the SBR. The defendants further argue that the legislation of 1991 and 1997 did not repeal c. 733, and, therefore, did not affect how plaintiffs’ retirement benefits are calculated, and as such, plaintiffs are still bound by the salary cap of G.L.c. 30, §46.

I.Standard of Review

Summary judgment shall be granted where there are no genuine issues of any material fact and where the moving party is entitled to judgment as a matter of law. Mass.R.Civ.P. 56(c); Cassesso v. Commissioner of Corr., 390 Mass. 419, 422 (1983); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976). The moving party bears the burden of demonstrating the absence of a triable issue, and that the summary judgment record entitles the moving party to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). The moving party may satisfy this burden either by submitting affirmative evidence that negates an essential element of the opposing party’s case or by demonstrating that the opposing party has no reasonable expectation of proving an essential element of her case at trial. Flesner v. Technical Commc’ns Corp., 410 Mass. 805, 809 (1991); Kourouvacilis v. Gen. Motors Corp., 410 Mass. 706, 716 (1991).

II.Declaratory Judgment

Under G.L.c. 231A, §1, the superior court “may . . . make binding declarations ... in any case in which an actual controversy has arisen.” G.L.c. 231A, §1 (emphasis added). Whether to grant a declaratory judgment when another remedy is available is within the court’s discretion. Massachusetts Mut. Life Ins. Co. v. Commissioner of Corp. & Taxation, 363 Mass. 685, 688 (1973). “The court may refuse to render or enter a declaratory judgment . . . for other sufficient reasons,” and “the reason for such refusal shall be stated in the record.” G.L.c. 231A, §3 (emphasis added). Additionally, the failure to exhaust administrative relief prior to bringing an action shall not be a bar “if the petition for declaratory relief is accompanied by an affidavit stating that the practice or procedure set forth pursuant to the provisions of [G.L.c. 231A] section two is known to exist by the agency or official therein described and that reliance on administrative relief would be futile.” G.L.c. 231A, §3. It should be noted that plaintiffs have not filed such an affidavit in this case.

III.Exhaustion of Administrative Remedies

As a general rule, where an administrative procedure is available, a party seeking declaratory relief must first exhaust the opportunities for an administrative remedy. Space Bldg. Corp. v. Commissioner of Revenue, 413 Mass. 445, 448 (1992). The Legislature has laid out a clear, statutory route to follow in matters such as this where an aggrieved party seeks relief. Under G.L.c. 32, §20(5), the Legislature sets out the general powers and duties of the SBR, which includes the power to determine the amount of regular compensation, provide payment of retirement allowances and correct any errors made in computing a benefit. G.L.c. 32, §§20(5)(b), (5)(c)(l), and (5)(c)(2).
*304 Upon the written request of any member, the SBR shall provide, within thirty days, a written notice of the benefits to which the member is or may be entitled. G.L.c. 32, §20(5)(k). The public employee retirement administration commission (“PERAC”) shall approve any determinations of the SBR. G.L.c. 32, §21(4). The Legislature spelled out further remedies under G.L.c. 32, §16(4). “Any person when aggrieved by any action taken or decision of the retirement board or [PERAC] rendered, or by the failure of a retirement board or [PERAC] to act, may appeal to the contributory retirement appeal board.” G.L.c. 32, §16(4). The contributory retirement appeal board (“CRAB”) then shall assign the appeal to the division of administrative law appeals (“DALA”) for a hearing. IdL DALA shall submit a written decision that a party can appeal to CRAB. Id. Lastly, any person aggrieved by a final decision of any agency in an adjudicatory proceeding shall be entitled to judicial review. G.L.c. 30A, §14.
Plaintiffs argue they need not exhaust administrative remedies “because of the nature of the controversy and the jurisdiction of the Court under the statutory provisions of [G.L.c. 231A, §§1, and 2].” Their argument, however, is flawed. “A proceeding for declaratory relief in itself does not operate to suspend the ordinary requirement that a plaintiff exhaust his administrative remedies before seeking judicial relief.” East Chop Tennis Club v. Massachusetts Comm’n Against Discrimination, 364 Mass. 444, 450 (1973). The Supreme Judicial Court has held:
To permit judicial interference with the orderly administration by the [SBR] of matters entrusted to it by the Legislature before it has commenced to exercise its authority in any particular case or before it has had an opportunity to determine the facts and make a final decision, would in effect transfer to the courts the determination of questions which the Legislature has left in the first instance to the [SBR], and would result in the substitution of the judgment of the court for that of the [SBR]. Courts must be careful not to invade the province of an administrative board. Saint Luke’s Hosp. v. Labor Relations Comm’n, 320 Mass. 467, 470 (1946).
The issue in this case falls within the province of the SBR. Plaintiffs confirm this by relying on two DALA decisions to support their arguments with regard to the merits of their case.[4] What plaintiffs overlook, however, is that in both those cases, the plaintiffs pursued their administrative remedies to reach the merits of their cases. See O’Shea v. State Bd. of Ret., CR-07-293 (DALA, Mar. 12, 2009); Burke et al. v. State Bd. of Ret., CR-07-293, -294, -296, -298, -315, -316, -362 (DALA, Mar. 12, 2009).
In O’Shea and Burke, plaintiffs submitted written requests to the SBR asking that it recalculate their retirement benefits to include cash housing allowances as regular compensation. Id. Following SBR’s denials of the requests, the plaintiffs appealed SBR’s decision to CRAB, which then assigned the appeal to DALA. Id. DALA interpreted “regular compensation,” as set forth in G.L.c. 32, §1 and other provisions of G.L.c. 32, and subsequently overruled the SBR’s initial decision. Id. Should the defendants in those cases choose to appeal, they would do so pursuant to G.L.c. 30A, §14.
Given that an administrative remedy is available to plaintiffs in this case, and preferred over judicial interference, the plaintiffs must first proceed with that remedy, and this court will not interfere with the administrative process. An administrative remedy provided by the Legislature is to be preferred over judicial interference in the administrative process. Gerald Bagley v. Contributory Ret. Appeal Bd., 397 Mass. 255, 258 (1986).

III. Actual Controversy Requirement

“In order for a court to provide declaratory relief, an actual controversy . . . must exist. In the context of a dispute between an administrative agency and a party, there is no actual controversy in the absence of final agency action.” Hingham v. Department of Hous. and Comm. Dev., 451 Mass. 501, 505 (2008); see also Wrentham v. West Wrentham Vill., LLC, 451 Mass. 511, 514 (2008) (no actual controversy where there is a nonfinal administrative determination); Samuels Pharmacy, Inc. v. Board of Registration in Pharmacy, 390 Mass. 583, 592 (1983) (no actual controversy until final agency decision).
Because plaintiffs have not pursued any administrative action through the SBR, and consequently, there has not been any final agency decision, no actual controversy exists. See Town of Hingham, 451 Mass. at 506. Additionally, plaintiffs themselves affirm, “to date, the State Board of Retirement has taken no formal position with respect to the plaintiffs.”[5]
The plaintiffs have failed to exhaust their administrative remedies, have failed to show that an actual controversy exists, and have failed to submit an affidavit pursuant to G.L.c. 231A, §3. The proper route to the Superior Court is through an appeal under G.L.c. 30A after the SBR has rendered a final decision, and not to pursue declaratory relief under G.L.c. 231 A. G.L.c. 30A, §14. As such, declaratory judgment is not appropriate in this case.

ORDER

For the foregoing reasons, it is hereby ORDERED that defendants’ cross-motion for summary judgment be ALLOWED and plaintiffs’ motion for summary judgment be DENIED.

hire annual base salaries were still subject to the salary cap under G.L.c. 30, §46.

See Memo in Supp. of Pis. ’ Mot. to Supplement the Exs. and Supp. Argument to the Pis.' Mot for Summ. J. 8.

See Pis. ’ Mot to Supplement the Exs. and Supp. Argument to the Pis. ’ Mot. For Summ. J. 3. Plaintiffs reference the SBR’s response letter to defendant University, dated April 30, 2009.