SAINT LUKE'S HOSPITAL *vs.* LABOR RELATIONS COMMISSION & others.

Suffolk. October 9, 1946. — November 30, 1946.

Present: FIELD, C.J., DOLAN, RONAN, WILKINS, & SPALDING, JJ.

Labor and Labor Union. Hospital. Charity. Jurisdiction, Labor. Declaratory Judgment. Equity Jurisdiction, Declaratory relief.

A suit in equity brought by an employer under G. L. (Ter. Ed.) c. 231A, inserted by St. 1945, c. 582, § 1, for a declaratory decree determining the jurisdiction of the labor relations commission to entertain a certain certification proceeding under c. 150A might be maintained where, although the suit was commenced while the certification proceeding was pending before the commission, the commission, by consenting to the suit being heard upon the pleadings and a statement of agreed facts, submitted the question of jurisdiction to the court.

Neither a hospital conducted as a nonprofit organization and public charity, nor its nonprofessional employees doing manual labor in its maintenance and operation were engaged in "industry and trade," and they were not within the scope of the State labor relations act, G. L. (Ter. Ed.) c. 150A.

BILL IN EQUITY, filed in the Superior Court on February 6, 1946.

The case was reserved and reported by *Swift*, J.

*J. W. Cussen*, (*C. J. Dunn* with him,) for the plaintiff.

*L. E. Crowley*, for the defendants.

*J. F. Dunn, Jr.*, by leave of court, submitted a brief as amicus curiae.

RONAN, J. A trade union, known as the Laundry Workers, Dry Cleaners and Miscellaneous Workers of the Amalgamated Clothing Workers of America, filed a petition under G. L. (Ter. Ed.) c. 150A, inserted by St. 1938, c. 345, § 2, as amended, with the labor relations commission seeking certification as the collective bargaining agency of certain nonprofessional employees of Saint Luke's Hospital. A hearing was held on this petition, at which the hospital was represented and moved to dismiss the petition on the ground that the commission had no jurisdiction to entertain the petition. Before the commission had made any decision on this motion, the hospital filed the present proceedings in the Superior Court against the commission and the union for a declaratory decree in accordance with G. L. (Ter. Ed.) c. 231A, inserted by St. 1945, c. 582, § 1, adjudging that the commission had no jurisdiction to hear the petition for certification. A preliminary injunction was issued restraining the commission from taking any further action in the certification proceedings. The commission appealed from the interlocutory decree granting the injunction. The case was then heard upon the pleadings and a statement of agreed facts, and the judge, without making any decision, reserved and reported the case.

The parties have agreed that the hospital, which is located in New Bedford, is a nonprofit organization incorporated in 1884 as a charitable corporation under Pub. Sts. c. 115. It has more than three hundred beds, and maintains an outpatient department and various clinics. Its funds are obtained from fees from patients, gifts, bequests and participation in a local community fund. It furnishes free services to patients who are unable to pay, and such service amounted in 1945 to twelve per cent of the total service rendered by

the hospital. Treatment and care of recipients of city welfare are paid for by New Bedford at a rate less than the regular charge. The Federal government pays for services provided for Federal patients.

The union sought certification as the bargaining agent of one hundred twenty-five employees, including laundry workers, maids, porters, machinists, yard help, watchmen, storemen, waitresses, page girls, kitchen and cafeteria help, and orderlies.

We must first inquire whether a bill for a declaratory decree will lie while proceedings are pending before the commission. The State labor relations law, so called, G. L. (Ter. Ed.) c. 150A, inserted by St. 1938, c. 345, § 2, constitutes a complete and comprehensive legislative plan for the elimination of substantial obstructions to trade and industry arising from disputes between employers and employees by removing the basis of such disputes, by protecting the right of employees to self organization and to join and form labor organizations, and by encouraging the practice of collective bargaining through representatives of their own choosing to negotiate the terms and conditions of their employment. The commission is empowered to take appropriate means to ascertain and designate the representatives selected by the employees as their bargaining agency, to define the units for such representation, to decide whether the employer has committed any unfair labor practice, and to secure enforcement of its orders by application to the Superior Court. An employer who is aggrieved by a final order of the commission may secure a judicial review of such order, but he has no right to such review until the commission has made a final order. This is in accord with the general rule that one must first exhaust his remedies before an administrative board entrusted with the powers above enumerated by a statute which provides for a judicial review before he may invoke any judicial interference with the action of the board. *Jordan Marsh Co.* v. *Labor Relations Commission,* 312 Mass. 597, S. C. 316 Mass. 748. *P. F. Petersen Baking Co.* v. *Bryan,* 290 U. S. 570, 575. *Pacific Telephone & Telegraph Co.* v. *Seattle,* 291 U. S. 300, 304. *Myers* v. *Bethlehem Ship-*

*building Corp.* 303 U. S. 41. *Scripps Memorial Hospital, Inc.* v. *California Employment Commission,* 24 Cal. (2d) 669. *Idaho Mutual Benefit Association, Inc.* v. *Robison,* 65 Idaho, 793. *Craig* v. *Kansas State Labor Commissioner,* 154 Kans. 691. *Universal Realty Corp. Inc.* v. *Felser,* 179 Md. 635. *Johnson* v. *Pratt,* 200 S. C. 315. *Provo City* v. *Claudin,* 91 Utah, 60. *Knestis* v. *Unemployment Compensation & Placement Division,* 16 Wash. (2d) 577.

To permit judicial interference with the orderly administration by the commission of matters entrusted to it by the Legislature before it has commenced to exercise its authority in any particular case or before it has had an opportunity to determine the facts and make a final decision, would in effect transfer to the courts the determination of questions which the Legislature has left in the first instance to the commission, and would result in the substitution of the judgment of the court for that of the commission. Courts must be careful not to invade the province of an administrative board. The instances are rare where circumstances will require such interference. Where an administrative board is created by or is acting under a statute that is violative of the Federal or a State Constitution, or where the board is dealing with a matter that is clearly beyond the scope of its authority, then one may challenge the jurisdiction of the board by invoking the aid of the courts and need not wait until the board has made a final order. Here again a word of caution is necessary. Where the contention is that the board is acting beyond its jurisdiction, the board should have an opportunity to ascertain the facts and decide the question for itself; but if it appears that the commission, instead of insisting upon its rights to determine its jurisdiction, submits to the court all the facts material to the question, leaving open only the question of law whether on those facts it has the power to entertain the proceedings, and that the facts thus disclosed clearly establish the lack of jurisdiction, we think that a citizen should not be compelled in such circumstances to participate in further proceedings before the commission and that the court may, if necessary, restrain any further action by

the commission. *Vermont & Massachusetts Railroad* v. *County Commissioners of Franklin,* 10 Cush. 12. *Connecticut River Railroad* v. *County Commissioners of Franklin,* 127 Mass. 50. *Chandler* v. *Railroad Commissioners,* 141 Mass. 208. *Hathaway Bakeries, Inc.* v. *Labor Relations Commission,* 316 Mass. 136. *Dun & Bradstreet, Inc.* v. *New York,* 276 N. Y. 198. *Bank of Yorktown* v. *Boland,* 280 N. Y. 673. *Bee Hive Mining Co.* v. *Industrial Commission,* 144 Va. 240. *Long Flame Coal Co.* v. *State Compensation Commissioner,* 111 W. Va. 409.

We now pass to the only question of substantive law presented by the record and consider whether the hospital comes within the sweep of the State labor relations act. The policy of that act, as already intimated, is the promotion of peace and the prevention of strikes in order that there may be no obstructions to the free flow of industry and trade. Various sections of the act establish the means that are to be utilized to accomplish this general purpose. The act, however, does not include all employees working in this Commonwealth, apart from those covered by acts of Congress, any more than does the national labor relations act, U. S. C. (1940 ed.) Title 29, § 151, et seq., include any except those engaged in pursuits where a strike would affect interstate commerce. *Alabama State Federation of Labor* v. *McAdory,* 325 U. S. 450, 464. Our act impliedly excludes from the commission jurisdiction over matters not affecting industry and trade. Indeed, § 5 (c) of our act, under which the application for certification was filed by the union, provides that "Whenever a question affecting industry and trade arises concerning the representation of employees, the commission may investigate such controversy and certify to the parties, in writing, the name or names of the representatives who have been designated or selected." To come within the ambit of the authority of the commission the selection of a bargaining representative must be connected with and related to industry and trade.

A hospital, like the plaintiff, whose doors are open to those needing medical and surgical treatment for which no charge is made to those unable to pay, and which depends

for its support and maintenance upon the fees of patients and gifts and donations and cares for recipients of public welfare sent to it by the city at reduced rates and is conducted in the interests of the general public and strictly as a nonprofit organization, is a public charity. *McDonald v. Massachusetts General Hospital*, 120 Mass. 432. *New England Sanitarium* v. *Stoneham*, 205 Mass. 335, 342. *Roosen* v. *Peter Bent Brigham Hospital*, 235 Mass. 66. Such a hospital is not conducting a business or commercial enterprise. It is not engaged in industry and trade. *Northwestern Hospital of Minneapolis* v. *Public Building Service Employes' Union Local No. 113*, 208 Minn. 389. *Western Pennsylvania Hospital* v. *Lichliter*, 340 Penn. St. 382. The agreed facts show that the sole activity of the plaintiff is the maintenance of its hospital, and the services of its nonprofessional employees, for whom the union seeks certification as their bargaining agency, are directed to the maintenance of the hospital itself. We need not consider what the relationship of the hospital to industry and trade would be if it were engaged in commercial undertakings, as the care and letting of realty or the conduct of a mercantile establishment, for the benefit of the hospital and employed persons in such undertakings. *Holder* v. *Massachusetts Horticultural Society*, 211 Mass. 370. *McKay* v. *Morgan Memorial Coöperative Industries & Stores, Inc.* 272 Mass. 121.

But it is urged by the commission that a hospital comes within the definition of an employer, and is not expressly exempted because the word as defined in § 2 includes "any person acting in the interest of an employer, directly or indirectly, but shall not include the commonwealth or political subdivision thereof, or any labor organization," with certain exceptions. It is contended that, specific exemptions having been expressly mentioned, no other exemptions are to be supplied by implication. This contention rests upon a familiar principle of statutory interpretation. *McArthur Brothers Co.* v. *Commonwealth*, 197 Mass. 137. *Boston & Albany Railroad* v. *Commonwealth*, 296 Mass. 426. *Spence, Bryson, Inc.* v. *China Products Co.* 308 Mass. 81. But the entire chapter in which the definition appears must be con-

strued as a whole, and the question is not whether a hospital is expressly exempted but whether a hospital comes within the sweep of the chapter in the light of its declared underlying and predominant aim and object. *Universal Machine Co.* v. *Alcoholic Beverages Control Commission,* 301 Mass. 40. *Commissioner of Corporations & Taxation* v. *Baker,* 303 Mass. 606. *Hinckley* v. *Retirement Board of Gloucester,* 316 Mass. 496. In passing it might be noted that the express exemption of the Commonwealth and cities and towns might have been inserted to free them from being affected by the chapter because of such operations, commercial in character, as the distribution and sale of water, electricity and gas. An interruption of these services might substantially affect industry and trade.

It is true that the employees whom the union sought to represent were engaged in various kinds of manual labor, some of which were similar to those performed in hotels; but if the nature of the work itself is similar, the relationship of the work performed in a hospital to industry and trade is different from the relationship that work performed in a hotel bears to industry and trade. *Hull Hospital* v. *Wheeler,* 216 Iowa, 1394. It is also true that such services were essential to the maintenance of the hospital, and those rendering the services can hardly be said to be engaged in industry or trade. The commission contends that a strike would stop the transportation of supplies to the hospital and diminish or destroy the ability of the strikers to purchase food and other necessary articles in the local market and thus adversely affect industry and trade. If we assume that these conditions would result from a strike, they would not bring the case within the State labor relations act, the purpose of which is to eliminate strikes or other forms of industrial strife or unrest which burden or obstruct industry and trade "by (a) impairing the efficiency, safety or operation of the instrumentalities of industry and trade; (b) occurring in the current of industry and trade; (c) materially affecting, restraining or controlling the flow of raw materials or manufactured or processed goods, or the prices of such materials or goods; or (d) causing diminution of employment and

wages in such volume as substantially to impair or disrupt the market for such goods in industry or trade." § 1. A strike would not affect industry or trade in any of the four ways mentioned in § 1, which defines the policy of the act. The policy limits the scope of the act and clearly shows that a hospital which is organized and conducted as a public charitable institution is not covered by the act. This conclusion is in accord with *Jewish Hospital of Brooklyn* v. *Doe,* 252 App. Div. (N. Y.) 581, *Western Pennsylvania Hospital* v. *Lichliter,* 340 Penn. St. 382, and *Salvation Army Case,* 349 Penn. St. 105. See *Pagel* v. *Trinity Hospital Association,* 72 N. D. 262. Compare *Northwestern Hospital of Minneapolis* v. *Public Building Service Employes' Union Local No. 113,* 208 Minn. 389, where the statute appears much broader than our own; *Wisconsin Employment Relations Board* v. *Evangelical Deaconess Society of Wisconsin,* 242 Wis. 78, where the application of the statute did not appear to be limited to trade; *Jordan* v. *Tashiro,* 278 U. S. 123; *American Medical Association* v. *United States,* 317 U. S. 519; *National Labor Relations Board* v. *Central Dispensary & Emergency Hospital,* 145 Fed. (2d) 852, where the sale of hospital facilities and services to individuals as a business was considered and discussed.

It follows that the interlocutory decree granting the injunction must be affirmed, and that a final decree must be entered adjudging that the hospital and its nonprofessional employees engaged in duties necessary for the maintenance and operation of the hospital are not within the provisions of the State labor relations act.

*So ordered.*