No. 22692.

INDUSTRIAL COMMISSION OF COLORADO *v.* THE WALLACE VILLAGE FOR CHILDREN, A NON-PROFIT CORPORATION.
(437 P.2d 62)

Decided February 5, 1968.

DUKE W. DUNBAR, Attorney General, FRANK E. HICKEY, Deputy, PETER L. DYE, Assistant, for plaintiff in error.

DAVIS, GRAHAM & STUBBS, ROBERT H. HARRY, L. RICHARD FREESE, JR., for defendant in error.

ROBINSON, TILTON & ROBINSON, amici curiae.

*En Banc.*

MR. JUSTICE HODGES delivered the opinion of the Court.

The sole issue involved on this writ of error is whether the Wallace Village for Children, a non-profit Colorado corporation, employing approximately 58 persons, is amenable to the collective bargaining provisions of the Colorado Labor Peace Act, namely, C.R.S. 1963, 80-4-1 to 80-4-22. This Act, pursuant to C.R.S. 1963, 80-4-3(1), specifies that the Industrial Commission of Colorado shall enforce and administer its provisions.

A group of teacher-therapists, employees of Wallace Village, complained to the Industrial Commission that their employer had committed an unfair labor practice in violation of the Labor Peace Act by refusing to bargain collectively with their union representatives. Wallace Village challenged the Industrial Commission's jurisdiction claiming that the provisions of the Labor Peace Act do not extend to a private non-profit corporation such as Wallace Village. After a hearing, the Industrial Commission Referee made a finding that the Commission

had jurisdiction and recommended that it proceed to enforce the provisions of the Labor Peace Act against Wallace Village. This was followed by a Commission order adopting this finding and asserting jurisdiction.

Wallace Village then filed its complaint in the trial court seeking review of the Industrial Commission's order and a declaration that the Industrial Commission has no jurisdiction. The lower court reviewed the record before the Industrial Commission and after a hearing, entered its findings in favor of Wallace Village and decreed that the Industrial Commission is without jurisdiction over Wallace Village. The trial court thereupon declared null and void the Industrial Commission's order.

This writ of error is brought by the Industrial Commission which claims that the lower court erred in its findings and that its judgment should be reversed.

In its findings the lower court leaned heavily on the precedent of *St. Luke's Hospital v. Industrial Commission of Colorado,* 142 Colo. 28, 349 P.2d 995. The single question resolved in that case as stated in the opening paragraph of the opinion is as follows:

"Is a charitable private hospital amenable to the collective bargaining provisions of The Colorado Labor Peace Act?"

This question was resolved in the negative.

The trial court stated in its findings that the Wallace Village comes very close to being a hospital as defined in *St. Luke's, supra,* and therefore, not subject to the provisions of the Labor Peace Act. We do not agree with this conclusion. Wallace Village, as clearly shown from the testimony before the referee of the Industrial Commission, is not a hospital, but rather, in its dedicated purposes, is a school which instructs and teaches children who have minimal brain damage. It hires teacher-therapists and counselors for this purpose. It does not provide surgical or medical services, nor does it employ or have in attendance doctors or nurses. It is a school for special children who require specialized

training, instruction, therapy, and care not available in regular schools.

Nevertheless, it is urged on behalf of Wallace Village that the rationale of *St. Luke's, supra,* is just as applicable to a private school as it is to a private hospital, and therefore, the ruling of the lower court is correct when it held that Wallace Village was not subject to the provisions of the Labor Peace Act, and that the Industrial Commission had no jurisdiction to enforce its provisions against Wallace Village.

In *St. Luke's, supra,* it was reasoned that the Labor Peace Act was intended by the legislature to apply only to employers engaged in an industrial activity, and that since the conduct of a hospital is not an industrial activity, it is not subject to the provisions of the Labor Peace Act. As stated in *St. Luke's supra,* this rationale and statutory interpretation was adopted from *St. Luke's Hospital v. Labor Relations Commission,* 320 Mass. 467, 70 N.E.2d 10, in which the Supreme Judicial Court of Massachusetts held that a private hospital by the nature of its activity is not engaged in industry and trade and is therefore not subject to the Massachusetts "State Labor Relations Law," M.G.L.A. Chapter 150A-1 to 12. The Massachusetts *St. Luke's* case, it must be emphasized, was interpreting the provisions of its own law, which in many respects, is quite different from our Colorado Labor Peace Act, particularly with respect to its scope. The Massachusetts labor relations law appears clearly, by its wording, to limit the scope of its provisions to industry and trade. To demonstrate this, the following pertinent portion of M.G.L.A. Chapter 150A-1 is set forth:

"1. Public policy. The denial by employers of the right of employees to organize and the refusal by employers to accept the procedure of collective bargaining lead to strikes and other forms of industrial strife or unrest, which have the intent or the necessary effect of burdening or obstructing *industry and trade* by (a) impairing

the efficiency, safety or operation of the instrumentalities of *industry and trade*; (b) occurring in the current of *industry and trade*; (c) materially affecting, restraining or controlling the flow of raw materials or manufactured or processed goods, or the prices of such materials or goods; or (d) causing diminution of employment and wages in such volume as substantially to impair or disrupt the market for such goods in *industry or trade.*"

\* \* \* \* \*

"Experience has proved that protection by law of the right of employees to organize and bargain collectively safeguards *industry and trade* from injury, impairment or interruption, and promotes the flow of *industry and trade* by removing certain recognized sources of industrial strife and unrest, by encouraging practices fundamental to the friendly adjustment of *industrial disputes* arising out of differences as to wages, hours or other working conditions, and by restoring equality of bargaining power between employers and *employees.*" "It is hereby declared to be the policy of the commonwealth to eliminate the causes of certain substantial obstructions to the free flow of *industry and trade* and to mitigate and eliminate these obstructions when they have occurred by encouraging the practice and procedure of collective bargaining and by protecting the exercise by workers of full freedom of association. self-organization, and designation of representatives of their own choosing, for the purpose of negotiating the terms and conditions of their employment or other mutual aid or protection." (Emphasis added.)

Furthermore, in the Massachusetts *St. Luke's* case, *supra,* the Supreme Judicial Court of Massachusetts specifically stated:

"Our act impliedly excludes from the commission jurisdiction over matters not affecting industry and trade. Indeed, section 5(c) of our act, under which the application for certification was filed by the union, provides

that 'Whenever a question affecting *industry and trade* arises concerning the representation of employees, the commission may investigate such controversy and certify to the parties, in writing, the name or names of the representatives who have been designated or selected.' To come within the ambit of the authority of the commission the selection of a bargaining representative must be connected with and related to industry and trade." (Emphasis added.)

Upon reanalysis of the Colorado Labor Peace Act, we find that because of the lack of reference to industry and trade in any of its provisions, it is not subject to the same interpretation as was applied to the Massachusetts Labor Relations law in the Massachusetts *St. Luke's* case, *supra.*

C.R.S. 1963, 80-4-1 is partially quoted as follows:
"Declaration of policy. — (1) The public policy of the state as to employment relations and collective bargaining, in the furtherance of which this article is enacted, is declared to be as follows:

(2) It recognizes that there are three major interests involved, namely: That of the public, the employee, and the employer. These three interests are to a considerable extent interrelated. It is the policy of the state to protect and promote each of these interests with due regard to the situation and to the rights of the others.

(3) *Industrial peace,* regular and adequate income for the employee, and uninterrupted production of goods and services are promotive of all of these interests. They are largely dependent upon the maintenance of fair, friendly and mutually satisfactory employment relations and the availability of suitable machinery for the peaceful adjustment of whatever legitimate controversies may arise. It is recognized that certain employers, including farmers and farmer co-operatives, in addition to their general employer problems, face special problems arising from perishable commodities and seasonal production which require adequate consider-

ation. It is also recognized that whatever may be the rights of disputants with respect to each other in any controversy regarding employment relations, they should not be permitted, in the conduct of their controversy, to intrude directly or indirectly into the primary rights of third parties to earn a livelihood, transact business and engage in the ordinary affairs of life by any lawful means and free from molestation, interference, intimidation, restraint or coercion." (Emphasis added.)

We do not believe the isolated use of the term "industrial peace" as in the above declaration of public policy was meant to limit the application of the Colorado Labor Peace Act only to industry and trade, because the sentence involved goes on to itemize other conditions which the act is designed to promote, including the "uninterrupted production of goods and services." To ascertain the clear meaning of this last phrase, it must be viewed in the disjunctive thereby indicating two separate conditions, to wit: uninterrupted production of goods and uninterrupted services.

In considering whether the legislature intended to include or exclude all activity classified as non-industrial or not involving industry or trade, it is of importance to look at one other portion of the act wherein use is made of the word "industries." The pertinent portion of C.R.S. 1963, 80-4-11(2) is as follows:

"Where, as provided by this article, the exercise of the right to strike by the employees of any employer engaged in the state of Colorado in the production, harvesting or initial processing, the latter after leaving the farm, of any farm or dairy product produced in this state would tend to cause the destruction or serious deterioration of such product, the employees shall give to the commission at least thirty days' notice of their intention to strike, and in the case of employees in all other *industries or occupations*, at least twenty days' notice of their intention to strike, and the commission

shall immediately notify the employer of the receipt of such notice." (Emphasis added.)

The above statutory reference to employees in all other industries or occupations is so clear and so unambiguous as to the intention of the legislature not to restrict the Labor Peace Act to only industry and trade, that it is unnecessary to even consider or discuss the usual rules of construction where ambiguities and uncertainties are found in statutory provisions.

Our Labor Peace Act, in defining the terms "person," "employer," and "employee," (C.R.S. 1963, 80-4-2(1)-(3)) does not exclude an employer such as Wallace Village, nor its employees. Furthermore, none of the phraseology of its provisions premise an interpretation of exclusion of non-industrial employers and employees.

At this time, therefore, we are unwilling to hold that the Colorado Labor Peace Act is restricted in its application to industry and trade only. We hold, therefore, that insofar as the Colorado *St. Luke's* case, *supra,* may be considered precedent for such an interpretation, we reject it. It is our view that the Colorado *St. Luke's* case, *supra,* stands for and remains precedent for one proposition only, and that is that a charitable private hospital is not amenable to the collective bargaining provisions of the Colorado Labor Peace Act.

Accordingly, we hold that the defendant in error, The Wallace Village for Children, a non-profit corporation, is subject to the provisions of the Labor Peace Act, and that the Industrial Commission of Colorado has jurisdiction to enforce the provisions of this act as against the defendant in error. The trial court's findings and judgment were erroneous, and are therefore reversed.

Judgment reversed.

MR. CHIEF JUSTICE MOORE and MR. JUSTICE PRINGLE concur in the result.

18

Mr. Justice McWilliams and Mr. Justice Kelley dissent.