Fahey, J.
Plaintiff, Daniel J. Burke, brings this action against Defendants, Medford Contributory Retirement System (“Medford”) and the Public Employee Retirement Administration Commission (“PERAC”). This action arose after PERAC directed Medford to recover plaintiffs excess earnings from him pursuant to the authority vested in PERAC by G.L.c. 32, §21(4). In his complaint, plaintiff asserts that when constitutional issues, statutory construction issues, and a question of the authority of an agency are raised, plaintiff may bring an action in the Superior Court without first exhausting his administrative remedies. Specifically, plaintiff argues that because PERAC lacked legal authority to direct Medford to reverse its decision pursuant to G.L.c. 32, plaintiff is entitled to remain in Superior Court at this early stage. Defendant moved to dismiss this case and while that was pending, both sides filed motions for summary judgment, which now need not be decided. After hearing and for the reasons set forth below, defendant’s motion to dismiss is ALLOWED.
BACKGROUND
Plaintiff worked as a police officer for the Town of Medford from April 1970 until October 1986. Compl. ¶4. While on the police force, plaintiff developed a heart condition. As a result of the condition, plaintiff received disability retirement under G.L.c. 32, §6, and G.L.c. 32, §94. Compl. ¶5.
General Laws c. 32 sets out a comprehensive scheme for the administration of public employees’ retirement and pension benefits. Pursuant to G.L.c. 32, §91 A, individuals who receive disability retirement benefits must file an annual statement with PERAC certifying the full amount of income that they have received over the past year. General Laws c. 32, §91A also provides that if an individual’s earnings in conjunction with their retirement benefits are more than $5,000 over what they would have earned in regular compensation had they not retired, the individual must refund the portion of his retirement allowance that is equal to such excess.
In April of 1998, plaintiff submitted a statement to PERAC pursuant to G.L.c. 32, §91 A, certifying his 1997 earnings from earned income. Compl. ¶8, 9. In November 1998, both Medford and PERAC separately thereafter informed plaintiff that he had earnings in excess of the amount permitted by G.L.c. 32, §91A, *515 and that he would therefore be required to reimburse Medford for the excess amount. Compl. ¶ 11, 12. On December 30, 1998, on plaintiffs appeal of the determinations of PERAC and Medford, Medford held a hearing on whether the money in question constituted earned income within the meaning of G.L.c. 32, §91 A. Compl. ¶13, 14. After the hearing, Medford sent a letter on May 4, 1999 to plaintiff, informing him that his 1997 excess earnings in the amount of $88,212.52 did not constitute earned income. Compl.¶ 18.
On May 11, 1999, PERAC requested from Medford a detailed explanation of its decision. Compl. ¶20, 21. There were additional communications between Med-ford and PERAC of which plaintiff did not know. On September 2, 1999, plaintiff was notified that PERAC had completed its review of his 1998 Statement of Earned Income and that PERAC had determined that he had excess earned income in 1998 and was therefore required to make a refund to Medford for that year. Compl. ¶24. In a letter dated September 7, 1999, PERAC informed Medford that plaintiffs excess earnings did constitute earned income within the meaning of G.L.c. 32, §91A, and that Medford was therefore directed pursuant to G.L.c. 32, §21(4), to recover the excess earnings from plaintiff. Plaintiff was not provided with a copy of this 9/7/99 letter from PERAC, only of the 9/2/99 letter. Compl. ¶25.
On September 21, 1999, Medford sent plaintiff a letter indicating that he had “earnings in excess of the amount allowed by the retirement law" in 1998 and that, as a result, he was required to refund $35,183.04 to Medford. Compl. ¶26. Plaintiffs counsel requested in a letter to Medford dated September 28, 1999, a hearing on the alleged excess income in 1998. Compl. ¶27.
On September 30, 1999, Medford informed plaintiff that it would withhold his retirement allowance until his 1997 additional earnings were recovered. Compl. ¶28. On January 26, 2000, Medford held a hearing[1] in which it reiterated that it would withhold plaintiffs pension until such time as it had recovered an amount equal to plaintiffs excess earned income. Compl. ¶33. Plaintiff has never sought review of that decision with the Contributory Retirement Appeal Board (“CRAB”).
DISCUSSION
Since PERAC’s motion to dismiss raises a jurisdictional issue, the court must address that issue prior to considering the merits of the case. Plaintiff brings this complaint asserting that when constitutional issues are raised, plaintiff may bring an action in the Superior Court without first exhausting his administrative remedies. Pl.’s Mem. Sup. Opp’n Mot. Dismiss at 2; Pl.’s Mot. Summ. J. at 2. Specifically, plaintiff argues that PERAC lacked legal authority to reverse Medford’s decision pursuant to G.L.c. 32. Pl.’s Mem. Sup. Opp’n Mot. Dismiss at 1; Pl.’s Mot. Summ. J. at 2.
Under G.L.c. 231A, §3, the SJC has imposed a general requirement that a plaintiff seeking declaratory relief of an adjudicatory decision must first have exhausted all administrative remedies available. See St. Luke's Hospital v. Labor Relations Comm'n, 320 Mass. 467, 469 (1946). The rationale for the imposed doctrine of exhaustion of administrative remedies in the context of declaratory judgment actions is to permit the agency to complete its assessment of the evidence and its fact finding, including the exercise of its technical and professional expertise.[2] See id. at 469.
However, case law holds that there are specific instances when a person may seek judicial review of an agency decision without first exhausting administrative remedies. See id. at 470. Exhaustion of administrative remedies is inapplicable where the administrative agency “is dealing with a matter clearly beyond the scope of its authority,” or when the administrative agency is created by or is acting under an unconstitutional statute. Id. at 470. In East Chop Tennis Club v. Massachusetts Comm’n Against Discrimination, 364 Mass. 444, 451-52 (1973), the SJC held that these exceptions apply only where the agency clearly lacks jurisdiction as a matter of law from the face of the complaint and answer.
Plaintiff claims that his appeal to the Superior Court at this stage is correct because PERAC is acting, plaintiff claims, under a statute that violates this plaintiffs right to due process. Plaintiff is correct that, if in fact that was the case, then plaintiff could, indeed, have recourse at this early stage to the Superior Court. The issue raised by plaintiff is whether, at the stage of PERAC’s review, plaintiff is entitled to due process, notice and a hearing.
The constitutional challenge to the statute, G.L.c. 32, §21(4), as applied to Burke, is the legality of PERAC’s direction to Medford dated 9/7/99 which states in pertinent part:
The decision of the Medford Retirement Board in this matter is incorrect as a matter of law. The earnings of Mr. Burke from Medford Enterprises, Inc. (d.b.a. United Vending) are earned income to Mr. Burke within the provisions of G.L.c. 32, §91 A.
As such, pursuant to the authority vested in the Commission by G.L.c. 32, §21(4), the Medford Retirement Board is hereby directed to recover the excess earnings of Mr. Burke in the amount of $35,057.04, the amount of Mr. Burke’s 1997 retirement allowance. The board shall immediately withhold Mr. Burke’s retirement allowance as security for the repayment of this excess income. Please notify the Commission in writing when these actions have been taken.
If Mr. Brake is aggrieved by this decision, he may appeal to the Contributory Retirement Appeal Board. Any appeal, without more, would not stop *516 the repayment of the amount owed to the Medford Retirement Board. Compl. ¶25, Exhibit C.
It is undisputed that PERAC “directed” Medford without notice to plaintiff. It was only at the local board’s stage that plaintiff was provided notice and a hearing. Plaintiff cites no authority for his claim that PERAC’s direction to Medford first required notice and a hearing to plaintiff. Plaintiff cites no authority for his claim that ‘‘PERAC’s authority under G.L.c. 32, §91A to unilaterally reverse Medford’s decision without notice to him or a hearing” is unconstitutional. Pl.’s Opp. Mot. Dismiss at 6. Burke also cites no authority for his assertion that CRAB lacks “the authority to determine the purely legal and constitutional questions posed by Burke.” Pl.’s Opp. Mot. Dismiss at 8.
In fact, the SJC has addressed this issue in Bagley v. CRAB, 397 Mass. 255, 257 (1986). Bagley’s claim was based on the refusal of the local board to provide him with a requested hearing. The SJC held that the appeal by Bagley, being aggrieved by the local board’s failure to provide a hearing, was to CRAB, not to the District Court under G.L.c. 32, §16(3). Certainly this confirms theSJC’s determination that, contrary to this plaintiffs assertion that CRAB is not capable of determining a due process, constitutional argument, the SJC has already determined that CRAB is capable of and able to so determine. In any case, as noted in Bagley, supra at n.2, G.L.c. 30A, §14 (1984 ed.) provides, in pertinent part: “(A]ny person . . . aggrieved by a final decision of any agency in an adjudicatory proceeding,... shall be entitled to a judicial review thereof." See Matthewson v. CRAB, 335 Mass. 610, 616 (1957).
Having now determined that, in fact, plaintiffs constitutional arguments are capable of being addressed by CRAB or judicial review in the ordinary course, this court now considers the plaintiffs alternative argument, that exhaustion is not required in these circumstances where PERAC has acted beyond the scope of its authority.
To prevail in this case, plaintiff must prove that PERAC acted illegally or beyond the scope of its authority, and therefore did not have the legal authority to direct Medford. PERAC argues that it has the authority to review the actions by local retirement boards based on the provisions of G.L.c. 32, §21(4). Def.’s Memo. Opp’n Pl.’s Mot. Summ. J. & Supp. Cross-mot. Summ. J. at 4. Whether PERAC has such authority to review a local retirement board’s determination, has been addressed by the SJC in Plymouth County Retirement Assoc. & another v. Comm'n of Public Employee Retirement, 410 Mass. 307, 310-11 (1991). As was stated in Plymouth County Retirement Assoc., the first part of G.L.c. 32, §21(4) provides, in pertinent part, that “the commissioner . . ., shall promulgate such rules and regulations as he may deem necessary to effectuate the purposes of this chapter ...” The second half of the same sentence contains a broad grant of review authority, stating “he or his agent shall approve any bylaws, rules, regulations, prescribed forms or determinations of any board in order to effectuate such purposes.” G.L.c. 32, §21(4). As did the defendants in Plymouth County Retirement Assoc., PERAC contends that “the approval power permits review of local retirement board determinations.” Plymouth County Retirement Assoc., 410 Mass. at 310. Def.’s Memo. Opp’n Pl.’s Mot. Summ. J. & Supp. Cross-mot. Summ. J. at 4-5.
Plaintiff argues that PERAC does not possess the authority to order the reversal of a local retirement board decision pursuant to G.L.c. 32, §21(4), because this section does not explicitly give PERAC power to review decisions of the local boards. Pl.’s Memo in Supp. of Mot. Summ. J. at 4-5. However, applying the reasoning stated in Plymouth County Retirement Assoc., G.L.c. 32, §21(4) vests abroad grant of review authority in the commissioner. Following Plymouth County Retirement Assoc, ’s reasoning, it appears that PERAC’s direction to Medford was legally authorized under G.L.c. 32, §21(4).
Based on this analysis, and my determination, following Plymouth County Retirement Assoc., that PERAC’s review of Medford’s determination is legally authorized under the statute, plaintiff cannot maintain this action having failed to first exhaust his administrative remedies. Determining that dismissal is appropriate, no action is taken on either of the motions for summary judgment.
Plaintiffs requested hearing occurred with the local Medford Board on 1/26/00. Plaintiff had 30 days to appeal Medford’s decision to CRAB. Instead of so appealing, plaintiff filed this lawsuit within that 30-day period. Having now determined that plaintiffs claim must fail at this stage in this court, plaintiffs request in Prayer 4 is allowed in the interest of fairness, and plaintiff has 30 days, until 10/30/00, to file an appeal to CRAB pursuant to G.L.c. 32, §16(4).
ORDER
For the foregoing reasons, defendant’s motion to dismiss is ALLOWED.

Plaintiff and/or his counsel were provided notice of this hearing and that it concerned plaintiifs 1997 earned income. Plaintiffs counsel argues that they mistakenly thought this hearing would have to concern plaintiffs 1998 earned income as they, not having received copies of the letters between PERAC and Medford, thought the 1997 earned income issues had been resolved.

Subsequent cases have affirmed the holding in favor of exhaustion of administrative remedies as a prerequisite to declaratory relief. Wilczewski v. Comm’r of the Dep’t. of Envtl. Quality Eng’g, 404 Mass. 787 (1989) (complaint properly dismissed even though plaintiffs contended that they need not exhaust administrative remedies because the DEQE lacked jurisdiction to consider the revised roadway plan); Town of Walpole v. Secretary of the Executive Office of Envtl. Affairs, 405 Mass. 67 (1989) (Superior Court lacked jurisdiction of Town of Walpole’s suit seeking a declaratory judgment as to the validity of the defendant secretary's determination).