van Gestel, J.
This matter comes before the Court on a request by the plaintiffs as operators of retail pharmacies registered in Massachusetts seeking preliminary injunctive relief enjoining the defendant, Douglas S. Brown, in his capacity as the Acting Commissioner of the Division of Medical Assistance, within the Executive Office of Health and Human Services of the Commonwealth (the “Commissioner”), from withholding, offsetting or recouping payments otherwise due the plaintiffs, as providers, for prescriptions dispensed by them.

BACKGROUND

The plaintiffs are each corporations operating pharmacies in the Commonwealth pursuant to registrations under G.L.c. 112, secs. 38 and 39. Sometimes herein the plaintiffs are referred to as “providers.” They bring this action pursuant to Mass.R.Civ.P. Rule 23 on their own behalf, and on behalf of a class consisting of all Massachusetts pharmacies which have received either a “Final Overpayment Determination” or a “Notice of Withholding Payments,” or both, from the Division of Medical Assistance (“DMA”).
What is involved are the Medicare and the Medicaid programs insofar as they relate to reimbursement for prescription drugs for eligible recipients.
“Medicare” is the federally funded and administered health insurance program for elderly and disabled individuals who are covered by Social Security. Medicare was established pursuant to 41 U.S.C. sec. 1395 et seq.
“Medicaid” is a program providing health care for certain categories of the poor, including the elderly and disabled. Medicaid was established pursuant to 41 U.S.C. sec. 1396 et seq. The Massachusetts Medicaid program is called “MassHealth.”
Both Medicare and MassHealth cover certain pharmacy prescriptions for low-income elderly and disabled individuals, although MassHealth covers many more prescriptions than does Medicare.
Some low-income elderly and disabled individuals are eligible for both Medicare and MassHealth at the same time. These people are referred to as “dually eligible.”
Medicare is funded entirely by the federal government. By contrast, the federal government and state participants, including the Commonwealth of Massachusetts, share the costs of MassHealth.
In the Commonwealth, DMA is responsible for the day-to-day administration of MassHealth. In carrying out its duties, DMA must comply with federal law, and DMA must obtain federal approval prior to any amendment or implementation of the Massachusetts Medicaid administrative plan. Thus, in order to receive federal funding, DMA must comply with the requirements in 42 U.S.C. sec. 1396a. G.L.c. 118A mandates this compliance with federal law.
MassHealth is a “payor of last resort.” See, e.g., G.L.c. 118E, sec. 23, 4th par. As a result, the Commonwealth must implement third-party liability (“TPL”) programs to ensure that federal and state funds are not misspent for covered services to eligible MassHealth recipients when third parties exist that are legally liable to pay for those services. There are federal regulations that cover situations where the existence of the third-party liability is known at the time a claim is presented to the state agency for payment, as well as for situations where third-party liability for payment of the claim is only suspected, or not known, at the time a claim is processed.
When third-party liability exists for any particular claim, the state agency may either (a) reject a provider’s claim for reimbursement for that service and return it to the provider for a determination of the amount of the third-party’s liability (called the “cost avoiding” method); or (b) pay the total amount allowed under the agency’s payment schedule and then seek reimbursement from the liable third party (called the “pay and chase” method).
When presented with a prescription by a customer in Massachusetts, the plaintiffs customarily ask the customer whether he or she has insurance coverage for the prescription and also asks the identity of any third-party payor (“TPP”). If the customer indicates that he or she has insurance coverage, the pharmacist filling the prescription is able to input the information into a computer that will connect with a “pharmacy benefits manager” which maintains records as to individual patients and TPPs. The pharmacy benefits manager then, after consulting its computerized data bank, informs the inquiring pharmacist that a particular TPP will pay for the prescription, or denies the claim.
If the customer is dually eligible under Medicare and MassHealth, the dispensing pharmacist often cannot readily determine whether the customer’s prescription will be covered by Medicare. There are a number of reasons for this. Many customers do not know, or do not accurately communicate, that they are dually eligible. Many prescriptibns are not filled by the actual patient, but instead are picked up by a family member, friend or other person, such as a taxi driver, messenger or co-worker. Also, to determine whether Medicare will reimburse for a particular prescription often requires knowledge of such diverse facts as diagnosis, citizenship and information which may be restricted from the pharmacist’s knowledge due to privacy concerns or only available to the prescribing physician, the latter of whom commonly, without notice, is not available to answer questions over the telephone.
DMA is said by the plaintiffs to be in possession of the information required to make a determination as to whether individual customers of the plaintiffs are dually eligible. The plaintiffs also assert, however, that
*35 DMA has no process in place to either identify dually eligible individuals to the pharmacists at the time of dispensing, or reject Medicare reimbursable claims for dually eligible individuals at the time of dispensing.
In July of 2002, DMA informed a number of pharmacies in Massachusetts, including the plaintiffs, that it had initiated what it called the “Medicare Part B Recovery Project” (the “Project”). The purpose of the Project was said to be to recover payments MassHealth had made to pharmacies for prescriptions and supplies dispensed to dual eligible beneficiaries between October 1, 2000 and March 14, 2002.
Some of the providers receiving the “Notice of Overpayment” dated September 20, 2002, informed the DMA that the notice, for a number of reasons, was in error and that no monies were due to the DMA.
On December 18, 2002, the DMA sent the providers a “Final Overpayment Determination.” Thereafter, some, or perhaps most, of the providers filed claims for adjudicatory hearings. Also, some, or perhaps all, of the providers received notices from the DMA that it would begin immediately recouping or withholding payment otherwise due to the providers. Supposedly, the recoupment or withholding process is set to begin on February 7, 2003.
DMA suggests that any injury to the plaintiffs is de minimus at best. For example, DMA suggests that the amount to be withheld from one of the named plaintiffs, the Walgreens pharmacies, is only 1.41% of the MassHealth payments that they received in 2002 (and only 0.94% for the entire 16-month period in issue), and for another, Johnson Drugs, the amount is 1.52%. DMA has not yet issued a withholding notice for the third named plaintiff, Brooks.
The plaintiffs seek a declaratory judgment to the effect that the DMA’s actions are erroneous and beyond its legal ability to impose. They also claim the DMA’s actions to be a breach of an actual or implied contract between DMA and the providers. And, in the meantime, and ultimately permanently, the plaintiffs seek injunctive relief barring the DMA’s recoupment or withholding activities.

DISCUSSION

In order to prevail on their request for preliminary injunctive relief, the plaintiffs bear the burden of showing: their likelihood of success on the merits; that they will suffer irreparable harm if the injunctive relief sought is not granted; and that their harm, without the injunction, outweighs any harm to the DMA from being enjoined. GTE Products Corp. v. Stewart, 414 Mass. 721, 722-23 (1993); Packaging Indus. Group, Inc. v. Cheney, 380 Mass. 609, 616-17 (1980).
There is also a public interest factor at issue here that must be considered by the Court. Will a preliminary injunction promote or adversely affect the public interest? Commonwealth v. Mass. CRINC, 392 Mass.
443, 447 (1983); Biotti v. Board of Selectmen of Manchester, 25 Mass.App.Ct. 637, 640 (1988).
MassHealth is a cooperative federal-state program for the financially needy. Tarin v. Commissioner of DMA, 424 Mass. 743, 746 (1997). It is governed by a mind-boggling array of regulations, both federal and state, that appear to leave everyone involved — the federal and state governments, providers of services, beneficiaries of the program, and judges — in a state of confusion and uncertainly about much of what the program is intended to do and, more significantly, how its end results are to be accomplished.
A Court is generally reluctant and cautious when asked to employ its vast equitable powers against another branch of government. Administrative agencies, such as the DMA here, must be presumed to have the powers and authority, conferred upon them when created, to act and administer programs, like the MassHealth program, generally free from interference by the courts. This is particularly so when the program has administrative procedures and remedies for any action taken. And, if the Commonwealth itself, as opposed to one of its agencies, is the real party in interest then the issuance of an injunction against it may be wholly beyond the powers of the Court. See, e.g., Executive Air Service, Inc. v. Division of Fisheries and Game, 342 Mass. 356, 357-58 (1961); St. Luke’s Hospital v. Labor Relations Commission, 320 Mass. 467, 469-70 (1946).
Attached to the complaint, as Exhibit A, is a copy of the September 20, 2002 Notice of Overpayment issued by the DMA. Significantly, the Notice advises the recipient that the recipient may, consistent with 130 CMR 450.237, submit “documentation proving that [the payments in issue] should not be recouped.” Under 130 CMR 450.237(B) this submission is a means by which the recipient can “preserve its right to an adjudicatory hearing and judicial review” of the charges in issue.
Similarly, in the December 18,2002 Final Overpayment Determination, attached as Exhibit B to the complaint, there is stated the following:
If you disagree with the [DMA’s] final determination, you may file a claim for an Adjudicatory Hearing in accordance with 130 CMR 450.241 and 450.243. You must file the claim with the Division of Medical Assistance, Board Hearing, Two Boylston Street, Boston, MA 02116 and send a copy to [the attention of the author of the Notice] at the above letterhead address within thirty (30) days from the date of Final Overpayment Determination.
The plaintiffs, and presumably others in the class they purport to represent, thus have had two opportunities to pursue regulatory relief from the initial and the final determinations of overpayment by the DMA. Two of the named plaintiffs — Johnson Drugs and Walgreens — are awaiting their administrative hear *36 ings.[3] For this Court to interfere, in the face of the procedural remedies provided in the regulations, is precisely the kind of thing Justice Ronan cautioned against in St. Luke’s Hospital, supra, 320 Mass. at 470. This is not one of those rare circumstances that requires such interference. The plaintiffs must exhaust their administrative remedies before they are entitled to injunctive relief from this Court. Villages Dev. Co. v. Secretary of the Exec. Office of Env. Affairs, 410 Mass. 100, 106 (1991).
The plaintiffs point to Judge King’s decision in Atlanticare Medical Center et al. v. Warring, Suffolk Superior Court No. 00-1451-H, as determining that the DMA’s approach here will have the effect of making the providers act as the DMA’s collection agency in violation of the explicit statutoiy and regulatory requirements governing the situation.[4] Atlanticare, however, came before Judge King on a motion for judgment on the pleadings pursuant to Mass.R.Civ.P. Rule 12(c) in a proceeding under G.L.c. 30A, sec. 14, seeking judicial review of an administrative decision. It arrived in the Superior court after, not before, the conclusion of the administrative review. This Court believes that the claims raised by the plaintiffs here should follow a similar path.
This Court is also concerned that the plaintiffs appear to have an adequate remedy at law and, therefore, are not entitled to injunctive relief. It is economic harm that the plaintiffs are concerned about. How much will DMA withhold from them, that they must then look to Medicare for reimbursement? As noted above, the percentages for each pharmacy company are relatively small, suggested for the named plaintiffs to be in a range under 2% of their payments from MassHealth. Further, the administrative hearings may well reduce considerably the amounts that DMA — if it has the legal authority to collect from the providers— may ultimately be able to recover. And, should more be withheld before the administrative hearings are concluded, the excess will be reimbursed to the providers, perhaps with interest.
Given the situation presented, it cannot be said that the plaintiffs have established their likelihood of success on the merits, that they will be irreparably harmed without injunctive relief, or that the balance as between the public interest and their economic interest is so clearly in their favor as to warrant preliminary injunctive relief.

ORDER

The plaintiffs’ request for preliminary injunctive relief is DENIED.

 Brooks has already been turned down adminstratively because, it is alleged, its appeal was not timely filed. Brooks, therefore, must now seek relief pursuant to G.L.c. 30A, sec. 14.

 The appeal from Judge King’s well-reasoned decision was argued before the S.J.C. on December 2, 2002, and currently is under advisement.