Holtz, Nancy Staffer, J.
INTRODUCTION
The plaintiff Temple Emanuel of Newton (‘Temple Emanuel”) brought an action against the defendants Massachusetts Commission Against Discrimination (“MCAD”) and an MCAD Commissioner Sunila Thomas-George (“Commissioner Thomas-George”) for declaratoiy judgment pursuant to G.L.c. 231 A, §1, judicial review pursuant to G.L.c. 30A, §14, and an injunction, seeking relief from MCAD’s refusal to dismiss a former Temple Emanuel teacher’s age discrimination complaint for lack of subject matter jurisdiction. Temple Emanuel also brought a claim against Thomas-George for mandamus pursuant to G.L.c. 249, §5. The defendants in response filed a Motion to Dismiss the plaintiffs complaint, claiming that this Court lacks jurisdiction to address plaintiffs claims.
For the following reasons, judgment in favor of Temple Emanuel is entered on Count I of the verified complaint for declaratoiy judgment. Further, the Defendants’ Motion to Dismiss is denied.
BACKGROUND A. Temple Emanuel
Temple Emanuel is a Conservative Jewish congregation affiliated with the United Synagogue of Conservative Judaism and the Synagogue Council of Massachusetts. Temple Emanuel operates a synagogue-based after-school and Sunday school called the Temple Emanuel Rabbi Albert I. Gordon Religious School (“religious school”) for children in kindergarten through seventh grade. The Temple Emanuel School Committee and certain Rabbis have general supervision over the religious school, including the selection of teachers.
The religious school’s mission is to instill in its students a commitment to “lifelong Jewish learning” and teach and foster the central values of Jewish heritage and identity. The religious school also instructs its students on Jewish customs and values, Jewish holidays, Jewish history, the Hebrew language, and prayer. Specifically, the religious school’s curriculum map identifies the “seven categories of Jewish life” upon which the curriculum is based, including “Avodat Hashem (prayer), Talmud Torah (text study), Shabbat, Holidays and observances, Ahavat Tzion (Love of Israel), Tikum Olam (Social Justice/Ethics), Hebrew, and creating home among Israel.” The curriculum does not include secular subjects other than occasional art projects related to the students’ religious studies. Teachers at the religious school are expected to teach all seven aspects of this curriculum within the ambit of Conservative Judaism.
Before Temple Emanuel made changes to the religious school’s personnel, teachers at the religious school were employed part-time for terms of one year. Their employment was not guaranteed from year to year. During the 2006-2007 school year, the religious school employed about twenty part-time teachers, including the complainant Gaye Hilsenrath (“Hilsenrath”). Hilsenrath taught at the religious school from the fall of 1984 to the spring of 2008.
In 2007 Temple Emanuel decided to make certain changes to the religious school, including to reduce the number of teachers to twelve “lead teachers” for kindergarten through fifth grade and to have clergy members and teachers from the Hebrew College Pro-zdor program teach the sixth and seventh grade students. Hilsenrath applied for one of the twelve lead teaching positions and was denied.
B. Procedural History
The complainant filed a charge of discrimination with MCAD in August 2008 claiming Temple Emanuel did not offer her a teaching position because of her age.
*436 MCAD then served Temple Emanuel requests for discovery, seeking, among other information, an explanation for why Temple Emanuel did not rehire the complainant. In October 2008 Temple Emanuel timely filed a motion to dismiss the discrimination complaint for lack of subject matter jurisdiction and a motion to stay MCAD’s investigation pending resolution of the motion to dismiss on the grounds that MCAD was precluded from investigating a termination of religious personnel under the “ministerial exception” to employment discrimination law. MCAD, through Commissioner Thomas-George, denied the motion to dismiss without explanation. Temple Emanuel sought review of the denial, which was affirmed without explanation. MCAD then informed counsel for Temple Emanuel that its sworn position statement and answers to interrogatories in response to Hilsenrath’s MCAD complaint would be due by May 18, 2009.
Temple Emanuel filed a complaint in this court for declaratory judgment, G.L.c. 231 A, §1, review under G.L.c. 30A, or mandamus on the issue of MCAD’s subject matter jurisdiction and also seeking a preliminary injunction or stay of MCAD’s investigation pending the court’s final determination. After a hearing on Temple Emanuel’s motion for a preliminary injunction, the parties agreed that no position statement or discovery responses would be due until June 12, 2009 pending further order of this court.
DISCUSSION A. Declaratory Judgment
As an initial matter, this court recognizes that G.L.c. 15IB confers upon MCAD the authority to investigate and act upon complaints of discrimination without judicial interference unless and until MCAD has made a final decision in an adjudicatory proceeding. See G.L.c. 30A, §14. In extraordinary circumstances, however, the Superior Court may, in its discretion, enter a declaratory decree pursuant to G.L.c. 231A, §1 while an administrative proceeding is pending and before an agency’s final decision. See St. Luke’s Hospital v. Labor Relations Comm’n., 320 Mass. 467, 470 (1946).[2]
While a party seeking such declaratory relief before a final agency decision must as a general rule first exhaust its administrative remedies, “exhaustion is not required where it would prove futile, or where only questions of law are presented to the court, or where irreparable harm would result if judicial action were delayed by the implementation of the administrative process.” Stock v. Mass. Hosp. Sch., 392 Mass. 205, 213 (1984). Temple Emanuel has attempted to dispute jurisdiction through proper agency channels and any further attempts would be futile. MCAD has twice denied Temple Emanuel’s motion to dismiss the complaint for lack of subject matter jurisdiction, and has asserted its jurisdiction since the inception of the present action. MCAD has at oral argument as well as in its post hearing submission argued that it is in the early stage of its Investigation and is therefore working with only “limited information.” However, as mentioned, there can be no doubt that MCAD intends to delve into the decision-making thoughts and processes of the leadership of the Temple, belying this argument that it needs more information on the jurisdictional issue.
Additionally, the question before the court is one of law, that is, whether MCAD has jurisdiction over Hilsenrath’s discrimination complaint. See St. Luke’s Hosp., 320 Mass. at 470 (“Where an administrative board is . . . dealing with a matter beyond the scope of its authority, then one may challenge the jurisdiction of the board by invoking the aid of the courts and need not wait until the board has made a final order”). In this case, it would appear that MCAD has had an opportunity to gather the necessary facts to make a determination as to jurisdiction. This Court agrees with the Temple’s characterization of Hilsrenrath’s filings relating to her duties as being little more than her subjective opinion as to whether or not her duties are religious in nature. Clearly, MCAD has inherent authority to make its own findings of fact essential to its determination of jurisdiction and simply deferring to a complainant’s conclusion does not make that conclusion a fact. While no written explanation has been provided by MCAD, there can be no doubt that it has made a final determination, based on the facts before it, that it has jurisdiction.
Here, the very method by which MCAD attempts to conduct discovery is the alleged constitutional violation. See generally East Chop Tennis Club v. Mass. Comm’n. Against Discrimination, 364 Mass. 444, 452 (1973). MCAD’s argument that it requires Temple Emanuel’s discovery responses as to why it did not employ Hilsenrath in order to reevaluate the issue of its jurisdiction is flawed. The facts in this case concerning Hilsenrath’s duties, which are the only facts germane to the question of MCAD’s subject matter jurisdiction over her complaint, are not going to change even with any additional discovery MCAD may seek. Indeed, even a cursory review of the discovery sought by MCAD reveals that it is not seeking to ascertain further facts to develop a record regarding the issue of jurisdiction. Rather, MCAD has now begun the process of investigating the merits of the complainant’s claim. Given the finality of MCAD’s decision on jurisdiction, this Court is now positioned to make a determination reviewing the record relied upon by MCAD.
Therefore, the court finds it appropriate and necessary to invoke its discretion in issuing a declaration as to MCAD’s subject matter jurisdiction. This is especially true where such jurisdiction, if asserted, will conflict with First Amendment protections against governmental intrusion of religious freedom. In the absence of such review, Temple Emanuel would be required to answer the interrogatories and subject itself to the full MCAD adjudicatory process when the heart of the controversy is whether MCAD even has the jurisdiction over such an investigation. See Space *437 Bldg. Corp. v. Comm’r of Revenue, 413 Mass. 445, 449 (1992) (“When the question before the court is purely one of law and when the lack of jurisdiction is clear, a judge should not require parties to spend valuable time and resources pursuing unnecessary administrative review”).[3] When questioned at oral argument as to why MCAD needed to proceed “full steam ahead” on the merits of the claim if it had any lingering concerns about whether or not the ministerial exception ought to apply here, MCAD responded that this is its legislative mandate and it could not deviate from it (as opposed to, for example, merely sending out discovery targeted at resolving jurisdiction first before subjecting the Temple to providing a position statement on the merits). This Procrustean approach to executing its legislative mandate seems inefficient at best and violative of the First Amendment in its application to the facts of this case.
B. Ministerial Exception
Turning to the merits of MCAD’s subject matter jurisdiction, the court must determine if the ministerial exception to claims arising out of an employment relationship between a religious institution and a ministerial employee precludes MCAD from exercising subject matter jurisdiction over Hilsenrath’s employment discrimination complaint. The ministerial exception applies to any claim that would require a court or agency to investigate and review a religious institution’s practices and reasoning behind employment decisions, thereby implicating the religious institution’s First Amendment right to be free from governmental intrusion. Williams v. Episcopal Diocese of Mass., 436 Mass. 574, 580-81 (2002). While the exception was originally applied primarily to pastors and clergymen, or “ministers,” it has been expanded to apply to any person employed by a religious institution and in a ministerial position whose responsibilities and duties are primarily religious. See Hollins v. Methodist Healthcare, Inc., 363 F.3d 299, 309-10 (4th Cir. 2004). There is simply no support for the argument that this exception requires that Hilsenrath be a rabbi, religious teacher or hold some other rank similar to that of a “minister.” The touchstone of the analysis is what are Hilsenrath’s primary duties.
While the court is sensitive to the mandates of G.L.c. 151B, the protections conferred by the First Amendment are absolute and protect Temple Emanuel in the instant case. The Rabbi Albert I. Gordon Religious School is a religious institution for purpose of the ministerial exception. The religious school is not only affiliated with, but also owned and operated by Temple Emanuel, a Jewish synagogue. It is not a full-time school that teaches state-mandated secular subjects, but rather operates after the children’s public or private day schools and on Sunday mornings. The religious school’s mission is one of fostering the Jewish faith and instructing children in Hebrew, prayers, and other faith-based lessons.
This Court has reviewed the facts as presented by the Temple, as well as considering those with which Hilsenrath takes issue. It remains clear that there is nothing about Hilsenrath’s duties as a teacher at the religious school — taken as a whole — which could be considered secular such that the ministerial exception would not apply to her. See e.g., DeMarco v. Holy Cross High Sch., 4 F.3d 166, 171 (2d Cir. 1993) (math teacher at a Catholic school not within the purview of the ministerial exception). Hilsenrath taught at a purely ecclesiastical school that employed no secular, or lay, teachers. Notably, the religious school’s mission statement states, “We value creativity and innovation in our teachers, who, together with our clergy, work to develop a meaningful understanding of our Jewish texts and traditions.”
While Hilsenrath has attempted to narrow her duties at the religious school to teaching the Hebrew language, the fact that she taught the primary language of the Jewish religion at a non-day school operated by a Jewish synagogue is reflective of her role as ministerial employee. See E.E.O.C. v. Catholic Uniu. of Amer., 83 F.3d 455, 461 (C.A.D.C. 1996), quoting Rayburn v. General Conference of Seventh-day Adventists, 772 F.2d 1164, 1169 (4th Cir. 1985) (the ministerial exception applies to employees of religious institutions whose “primary duties consist of teaching, spreading the faith... or supervision or participation in religious ritual and worship”); E.E.O.C. v. Sw. Baptist Theological Seminary, 651 F.2d 277, 283 (5th Cir. 1981) (“ministers” included non-ordained faculty at a Baptist seminary where no course had a secular purpose). While the teaching of the Hebrew language in any other school may not necessarily implicate the ministerial exception, it does so in this case where, as articulated in the religious school’s mission statement, the Hebrew language is part and parcel of the students’ study of Jewish prayer, texts, and rituals.[4] As the Temple appropriately notes, teaching the Hebrew language, particularly in this setting, is simply not the same as teaching a language like French, Italian or Spanish as a free standing academic pursuit. The teaching of this particular language simply cannot be decoupled from the Jewish religion. Furthermore, it is undisputed that Hilsenrath taught various prayers and rituals, in addition to stories from the Bible and Jewish holidays and blessings, and initiated discussions in the classroom about their meaning and religious significance.
Hilsenrath’s role as teacher at the religious school simply cannot be extracted from the school’s overall religious mission and integration into the Temple Emanuel synagogue such that she is outside the scope of the ministerial exception. See E.E.O.C. v. Roman Catholic Diocese of Raleigh, N.C., 213 F.3d 795, 802, 804 (4th Cir. 2000) (a music director at the Catholic high school was within the purview of the ministerial exception because music is “a vital means of expressing and celebrating those beliefs which a religious community holds most sacred” and an “integral part of many different religious traditions” and the teacher was the “vessel *438 through whom the church chose to spread its message in song”). Hilsenrath did not teach a secular subject like math or science, nor were her duties janitorial or administrative or otherwise wholly distinct from the school’s religious mission. See id. Rather, Hilsenrath was charged with teaching integral components of the Jewish religion in accord with the fundamental religious mission of the school. To the extent Hilsenrath has, through her affidavit, taken issue with some minor points, they are just that and do nothing to change the only reasonable conclusion which could be drawn from the record: this is a religious school and the core mission of its teachers is religious. Who should best teach the after-school students at this Temple school is a decision for the Temple, informed by the religious, not secular, needs of the Temple. It is not to be second-guessed by a secular entity unequipped with the knowledge to assess and determine the religious needs of these young people. Therefore, Hilsenrath comes within the ministerial exception such that MCAD is barred from investigating and evaluating Temple Emanuel’s motivation behind employment decisions regarding one of its “ministerial” employees. See Williams, 436 Mass. at 578.
ORDER
It is ordered that the Defendants’ Motion to Dismiss is denied. It is further ordered that judgment enter for the plaintiff.

This Court is well aware that only in such rare circumstances should the court interfere in the proceedings of an administrative agency where it has not issued a final decision on the merits. This case is unlike, for example, suits invoking governmental immunity or immunity under the anti-SLAPP statute where, as a matter of right, immediate interlocutory appeal is allowed. However, the purpose of such interlocutory appeal — to prevent the loss of the privilege before final judgment-ought to apply here, particularly given the strength of the Temple’s case regarding the jurisdiction issue. In this case, it is clear that the interference with Temple Emanuel’s rights cannot be remedied on appeal should the MCAD investigation persist. Therefore, the court may exercise its discretion to provide a remedy where the alleged injury is MCAD’s subject matter jurisdiction itself. See e.g., Fabre v. Wilson, 436 Mass. 517, 521 (2002).

Although this decision is framed as a judgment pursuant to G.L.c. 231A, §1, this court notes parenthetically that the other remedies sought would be equally supported by the existing record.

Temple Emanuel explains that the Torah, the Book of Prophets, and many of the Jewish faith’s Sabbath and holiday prayers are written, read aloud, and chanted in the Hebrew language.